No. 20-70019

_____

In the

# United States Court of Appeals for the Fifth Circuit

_____

United States of America,
*Plaintiff-Appellee*

v.

Christopher André Vialva,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
No. 6:99-cr-00070

_____

## APPELLANT'S BRIEF

SUSAN M. OTTO
Federal Public Defender
MICHAEL LIEBERMAN
Assistant Federal Public Defender
Federal Public Defender Organization
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Tel: (405) 609-5930

JARED TYLER
Tyler Law Firm, PLLC
P.O. Box 230804
Houston, Texas 77223
Tel: (832) 606-2302

*Counsel for Christopher André Vialva*

**\*\*CAPITAL CASE – EXECUTION DATE SEPTEMBER 24, 2020\*\***

# CERTIFICATE OF INTERESTED PERSONS

No. 20-70019    *United States of America v. Christopher André Vialva*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Appellant*
Christopher André Vialva

*Counsel for Appellant*
    Susan M. Otto
    Michael Lieberman
    Jared Tyler

*Appellee*
United States of America

*Counsel for Appellee*
    John F. Bash
    Joseph H. Gay, Jr.
    Elizabeth Berenguer
    Mark Stelmach

                                  s/ Jared Tyler

ii

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant Fed. R. App. P. 34(a)(2), oral argument is requested, because the appeal involves an issue of first impression in this Circuit and the nation concerning the implementation of the federal death penalty in a capital case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.............................................ii

STATEMENT REGARDING ORAL ARGUMENT...................................iii

TABLE OF AUTHORITIES................................................................. v

APPELLANT'S BRIEF........................................................................ 1

JURISDICTION ................................................................................ 2

STATEMENT OF ISSUES PRESENTED ................................................ 2

STATEMENT OF THE CASE ............................................................... 2

SUMMARY OF THE ARGUMENT ........................................................ 7

ARGUMENT..................................................................................... 8

I.   FEDERAL LAW REQUIRES THAT A FEDERAL DISTRICT COURT IMPLEMENT A JUDGMENT IMPOSING A DEATH SENTENCE ACCORDING TO THE LAW OF THE STATE IN WHICH THE COURT SITS.......................................................... 8

  A.   Judicially Created Law Governing Issuance of Warrants and Setting of Execution Dates .................................. 9

  B.   The Federal Death Penalty Act of 1994 .............................. 13

II.  TEXAS LAW REQUIRES THAT A JUDGMENT IMPOSING A DEATH SENTENCE BE IMPLEMENTED BY AN ORDER OF THE CONVICTING COURT SETTING A DATE OF EXECUTION THAT IS NO EARLIER THAN THE 91ST DAY FROM THE DAY AFTER IT IS ENTERED AND BY THE CONVICTING COURT ISSUING AN EXECUTION WARRANT ............................................................................... 17

III. THE DISTRICT COURT BELOW SET AN EXECUTION DATE IN VIOLATION OF TEXAS LAW ................................................. 19

CONCLUSION ................................................................................20

CERTIFICATE OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS ..................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS..........................................................22

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

*Battaglia v. State,*
     537 S.W.3d 57 (Tex. Crim. App. 2017) ............................................. 18

*Castillo v. State,*
     2018 WL 739077 (Tex. Crim. App. 2018) ...................................... 19

*In re Carter,*
     541 S.W.3d 743 (Tex. Crim. App. 2017) ...................................... 18

*In re Fed. Bureau of Prisons' Execution Protocol Cases,*
     955 F.3d 106 (D.C. Cir. 2020) ................................................ 15–16

*Mitchell v. United States,*
     --- U.S. ---, 2020 WL 5016766 (2020) ............................................. 9

*Peterson v. Barr,*
     965 F.3d 549 (7th Cir. 2020) ......................................................... 16

*United States v. Mitchell,*
     --- F.3d ---, 2020 WL 4815961 (9th Cir. 2020) .............................. 16

*United States v. Bourgeois,*
     423 F.3d 501 (5th Cir. 2005) ......................................................... 16


<u>Constitutional Provisions, Statutes, and Rules</u>                          <u>Page</u>

18 U.S.C. § 3231 ................................................................................. 2

18 U.S.C. § 3595 ................................................................................. 2

18 U.S.C. § 3596 ................................................................ 7–9, 13–16

18 U.S.C. § 3742 ................................................................................. 2

28 U.S.C. § 1291 ................................................................................. 2

28 U.S.C. § 1651 ................................................................................. 2

Tex. Code Crim. Proc. art. 43.141 .............................................. 17–19

Tex. Code Crim. Proc. art. 43.15 ..................................................... 18


<u>Other Authorities</u>                                                               <u>Page</u>

1 U.S. Op. Att'y. Gen. 228 (1818) ................................................ 10–12

7 U.S. Op. Att'y. Gen. 561 (1855) ..................................................... 12

28 C.F.R. 26.2 ..................................................................................... 4

Crimes Act of 1790, ch. 9, § 33 ......................................................... 9

No. 20-70019

––––––––––––––––––––––

In the

# United States Court of Appeals for the Fifth Circuit

––––––––––––––––––––––

United States of America,
*Plaintiff-Appellee*

v.

Christopher André Vialva,
*Defendant-Appellant.*

––––––––––––––––––––––

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
No. 6:99-cr-00070

––––––––––––––––––––––

## APPELLANT'S BRIEF

This appeal requires the Court to decide an issue of first impression in the modern federal death penalty era: whether federal courts implementing a death sentence imposed by their judgment are bound to follow state law governing the setting of execution dates and issuance of execution warrants.

## JURISDICTION

The district court possessed subject-matter jurisdiction pursuant 18 U.S.C. § 3231 and 28 U.S.C. § 1651. This Court has jurisdiction pursuant 18 U.S.C. §§ 3595, 3742(a) and 28 U.S.C. § 1291. The decision and orders sought to be reviewed were issued September 11, 2020. Mr. Vialva filed a notice of appeal on September 12, 2020. The appeal is from a final order that disposes of all parties' claims.

## STATEMENT OF ISSUES PRESENTED

This appeal presents the question whether a federal district court is bound to follow state laws governing the setting of execution dates and issuance of execution warrants to implement a judgment sentencing a person to death.

## STATEMENT OF THE CASE

Appellant Christopher Vialva appeals the order entered September 11, 2020 by the United States District Court for the Western District of Texas fixing the date of Mr. Vialva's execution for September 24, 2020. The order violates federal law requiring district courts to implement judgments imposing a death sentence in accordance with state law requirements.

On July 31, 2020, Federal Correctional Complex, Terre Haute, Warden T.J. Watson conveyed a letter to Mr. Vialva purporting to inform him that "a date has been set for the implementation of your death sentence, pursuant the Judgment and Order issued on June 16, 2000." *See* Ex. 1. The letter stated the Director of the Federal Bureau of Prisons ("BOP") determined Mr. Vialva should be executed September 24, 2020. At the time, no court had issued any execution warrant directing the Director of the BOP or anybody else to execute Mr. Vialva. The date selected by the Director afforded Mr. Vialva 55 days between the notice and the scheduled execution.[1]

On the same day, the Government filed a "Notice Regarding Execution Date" in the district court case stating, "The United States hereby notifies the Court that the Director of the Federal Bureau of Prisons, upon the direction of the Attorney General, has scheduled the execution of Christopher Andre Vialva, in accordance with 28 C.F.R. Part

---

[1] This abbreviated schedule is significantly less than the 137 and 139 days the Government initially afforded two of the recently executed federal inmates, Daniel Lee and Lezmond Mitchell. *See United States v. Lee,* E.D. Ark. Case No. 4:97-cr-00243-LPR-2, 2020 WL 3921174 at *2 (July 10, 2020); *United States v. Mitchell,* __ F.3d __, 2020 WL 4815961 at *1 (9th Cir. Aug. 19, 2020).

26, to take place on September 24, 2020." Notice Regarding Execution Date, *United States v. Vialva*, No. 6:99-cr-00070 (W.D. Tex. July 31, 2020) (Doc. 673). The Government's threatened actions violated the Department of Justice's own regulations on which it purported to rely. Recognizing the Government's power to execute flows from and is dependent upon the judiciary whose judgment it is executing, those regulations require the Government to obtain a court order setting the date of execution and directing it to occur. *See* 28 C.F.R. 26.2(a) ("Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order."). The Government never requested any such order; it simply declared it was going to execute Mr. Vialva.

On August 14, 2020, Mr. Vialva moved the district court to enjoin his warrantless execution. Mr. Vialva raised multiple grounds in support of his request for injunctive relief. He contended no Congressional or other authority endowed the Director of the BOP or the Attorney General with the power to order executions generally or to specifically execute

4

him September 24, 2020.[2]  Mr. Vialva argued federal law governing his case required the issuance of an execution warrant commanding a United States Marshal to supervise the execution of the defendant and fixing its date.  Further, he argued state law governed this aspect of implementation of the death sentence.  Since the district court sits in Texas, the material aspects of Texas law governing the setting of execution dates and issuance of execution warrants controlled. Texas law requires courts to issue orders setting execution dates and warrants directing relevant executive officers to carry out the executions.  Texas law requires a minimum of 91 days between the order setting the date and the execution.  Mr. Vialva requested the district court comply with Texas law by setting an execution date at least 91 days from the day after the order setting the date.

On September 11, 2020, the district court issued an order setting Mr. Vialva's execution date for September 24, 2020, twelve days from the day after the order. The district court's order is in clear violation of Texas

---

[2] In addition to a lack of Congressional authority, Mr. Vialva argued the existing judgment did not authorize or direct the BOP, Attorney General, or any Marshal to execute Mr. Vialva on September 24, 2020, as it was threatening to do.

5

law. The district court offered no reason for its decision, which had the effect of ratifying the date selected without explanation or apparent authority by the Attorney General.[3]

Mr. Vialva requests this Court hold the material aspects of Texas law governing the implementation of death sentences—including date-setting and warrant requirements—govern the implementation of the

---

[3] After a hiatus of 17 years, the Government selected seven of the 62 federal death-sentenced prisoners to die. The selection process appears to be without reference to the age of the case or other objective legal factors. The process continued despite the extreme disruption of civic and private life caused by the pandemic COVID-19 coronavirus. It has also coincided with the run-up to a national election in which law and order is a central theme. The Government's efforts to expand the roster for execution nevertheless continues unabated. *See Protocol Cases,* Case No. 19-mc-145 (TSC), *Defendants' Notice Regarding Their Motion to Vacate Preliminary Injunctions Barring the Executions of Plaintiffs James Roane, Richard Tipton, Cory Johnson, Orlando Hall, Bruce Webster, Anthony Battle, and Jeffrey Paul,* filed 09/11/2020, Document 241.

Mr. Vialva does not suggest the district court lacks power to implement the judgment sentencing him to death. The district court has the power, in a jurisdictional sense and in its independent judgment, to order Mr. Vialva's execution, provided it does so in a manner consistent with controlling Texas law. Objectively, it is impossible to discern the source of the urgency to execute Christopher Vialva September 24, 2020, beyond accomplishing some Government objective divorced from rule of law. The district court violated the law governing the implementation of executions and, by doing so, furthered the arbitrary actions of the Government. This undermines public trust and confidence in the independence of the federal judiciary.

death sentence in this case. He additionally requests the Court find the September 11, 2020, order violated controlling law and vacate that order.

## SUMMARY OF THE ARGUMENT

Federal law obligates district courts to implement death sentences in accordance with the law of the state in which the death sentence was rendered. Both judicially developed law from the earliest days of our nation as well as 18 U.S.C. § 3596(a) are sources of this law. Both require the federal district court to follow state law regarding the setting of execution dates and the issuance of execution warrants.

Texas law requires the court of conviction to set an execution date and issue an execution warrant commanding the relevant executive official to conduct the execution. Texas law also prohibits a court from setting an execution date earlier than the 91st day after the date the order setting the execution is issued. On September 11, 2020, the district court issued an order setting Mr. Vialva's execution date for September 24, 2020, in clear violation of this governing state law.

## ARGUMENT

**I.    FEDERAL LAW REQUIRES THAT A FEDERAL DISTRICT COURT IMPLEMENT A JUDGMENT IMPOSING A DEATH SENTENCE ACCORDING TO THE LAW OF THE STATE IN WHICH THE COURT SITS**

There are two sources of federal law potentially relevant to this case. First, judicially created law dating from the nation's founding reflects that the issuance of a warrant by a competent authority is required to empower a United States marshal to carry out (or supervise) an execution and to fix the date on which it is to occur is required in every case to implement a death sentence imposed by a federal court. That law further requires that district courts apply the laws of the states in which they sit when implementing death sentences, including the setting of the date and issuance of the execution warrant.

Second, the Federal Death Penalty Act of 1994 provides, "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). This provision has never been definitively interpreted by the Supreme Court, and as Justice Sotomayor recently observed,

8

"Considerable uncertainty exists about the scope of this provision." *Mitchell v. United States*, --- U.S. ---, No. 20A32, 2020 WL 5016766, at *1 (Aug. 25, 2020) (Sotomayor, J., statement respecting the denial of the application for stay). Mr. Vialva asserts "the manner prescribed by the law of the State" includes the issuance of warrants and the setting of execution dates. Under this construction, the statute operates as a Congressional directive to continue the judicially developed practice of following state law warrant and date-setting requirements. If this construction is rejected, that means Congress is silent on this particular matter and the judicially developed law applies in the absence of Congressional action.

## A.    Judicially Created Law Governing Issuance of Warrants and Setting of Execution Dates

Shortly after the nation's founding, there was some confusion about how sentences of death pronounced in federal judgments were to be implemented. Congress had not prescribed any rules beyond specifying "the manner of inflicting the punishment of death, shall be by hanging the person convicted by the neck until dead." Crimes Act of 1790, ch. 9, § 33, 1 Stat. 112, 119. Specifically, the confusion was whether the court of judgment or the President would issue a warrant or order fixing a date

9

of execution and directing a marshal to conduct it. What was not in dispute was that a warrant or court order must issue directing officers to conduct the execution.[4]

In 1818, United States Attorney General Wirt wrote to Secretary of State John Quincy Adams asking him to bring to President James Monroe's attention the need to issue a warrant of execution for individuals sentenced to death by a federal court in Maryland. 1 U.S. Op. Att'y. Gen. 228 (1818). Attorney General Wirt's letter was prompted by a letter from Supreme Court Justice Duvall. Justice Duvall, who was a former Maryland state court judge, wrote to Attorney General Wirt because he heard President Monroe believed it was the court's duty "to fix the day for the execution." *Id*. Justice Duvall thought it was the

---

[4] In the case of Thomas Bird, for example—the first federal execution since the establishment of the federal courts—the Hon. David Sewall issued a "Writ or Warrant of Execution from the District Court to the Marshall" to carry out Thomas Bird's death sentence "at the Time mentioned in the Judgment . . . ;" Mr. Bird was executed on June 25, 1790. *See* "To George Washington from Thomas Bird, 5 June 1790," n.1, Founders Online, National Archives, available at https://founders.archives.gov/documents/Washington/05-05-02-0299. (last visited Aug. 1, 2020) [Original source: The Papers of George Washington, Presidential Series, vol. 5, 16 January 1790–30 June 1790, ed. Dorothy Twohig, Mark A. Mastromarino, and Jack D. Warren. Charlottesville: University Press of Virginia, 1996, pp. 478–481.].

President's duty to issue a warrant in that particular case, because the law of Maryland required its Governor, rather than its courts, to issue execution warrants. *Id.*

Noting Congress had passed no law on the subject, Attorney General Wirt observed "that the courts of the United States have adopted, in this particular, the practice of the State courts in which they hold their sessions, and these are various: death-warrants from the governor being required in several of the States; and in others the courts fixing the day." *Id.* Attorney General Wirt explained while it would be "desirable that there should be a uniform rule to guide the conduct of the President in this respect," only Congress could prescribe such a rule. *Id.*

Near the founding of the nation, the judicially developed rule for implementing federal executions emerged: when Congress is silent, executions must be implemented in the manner prescribed by state law, including that state's warrant requirements.[5] For death judgments from

_____

[5] The circumstances prompting Justice Duvall to inquire of the Attorney General were quite dire. Attorney General Wirt reported "the case has become one of great emergency; for the convicts, finding that they are not to be pardoned, have become desperate, and have once actually broken the prison and made their escape: but they have been retaken. They will, however, unquestionably attempt it again, and probably with more success, unless they should be guarded at an

federal courts sitting in jurisdictions where state law required the court to order the execution and fix the day, the federal court would issue an execution warrant or order. For death judgments from federal courts sitting in jurisdictions where state law required the governor to issue an execution warrant, the President would be required to issue an execution warrant fixing the day and directing a marshal to conduct the execution.[6]

If Congress has remained silent on this specific question, the same rules governing how executions are implemented expressed by Attorney General Wirt in 1818 still apply. As historical practice and Attorney General Wirt's opinion make clear, the law of the state in which the federal court issuing the judgment governs the issuance of the warrant.

---

enormous expense to the United States." 1 U.S. Op. Att'y. Gen. 228 (1818). Despite the dire circumstances, the judiciary adhered to the warrant requirements of Maryland state law, causing Attorney General Wirt to convey to the Secretary of State "the necessity of drawing the President's immediate attention to this subject." *Id.* at 229.

[6] In 1830, President Jackson determined to leave "the execution of the sentence of the law to the direction of the court" in all cases. *See* Pardoning Power, 7 U.S. Op. Att'y. Gen. 561, 562 (1855). In 1855, this had become "the established practice." *Id.* at 563. The federal practice may have evolved to leave to the courts the duty to fix the date and issue an execution warrant. This did not obviate the legal requirement for the courts' actions to conform to state law.

**B.    The Federal Death Penalty Act of 1994**

In 1994, Congress passed the Federal Death Penalty Act to regulate the use of the death penalty by the federal government. It legislated within the extant judicial background. The Act does not address how or by whom execution dates are to be set and execution warrants issued. This silence is notable in the context of the Act.  The Act specifies who is eligible to be sentenced to death, 18 U.S.C. § 3591; the mitigating and aggravating factors that may be considered to determine whether a death sentence is warranted, *id.* § 3592; how the sentencing proceeding is to be conducted where the Government seeks death, *id.* § 3593; how a death sentence is imposed, *id.* § 3594; how a death sentence is reviewed, *id.* § 3595; how a death sentence is implemented, *id.* § 3596; what facilities may be used for execution, *id.* § 3597; special provisions for Indian country, *id.* § 3598; and how counsel is to be provided, *id.* § 3599.

Concerning implementation of a death sentence, the FDPA provides:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a

13

United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.[7]

18 U.S.C. § 3596(a). While this provision empowers the Attorney General and the United States marshal to take certain actions, the acts may not occur until the time "[w]hen the sentence is to be implemented." *Id.* Mr. Vialva contends Congress's use of the passive voice indicates deference to the existing judicial practice of following state law governing the setting of execution dates. Congress assumed courts would enter orders directing that an execution will occur and specifying "[w]hen the sentence is to be implemented."

Section 3596(a) also provides the "implementation of a sentence of death" shall be "in the manner prescribed by the law of the State in which the sentence is imposed." It is unclear whether this implementation requirement extends to the issuance of warrants and the setting of

---

[7] Two additional subsections bar the execution of persons who are pregnant, intellectually disabled, or incompetent for execution. *Id.* § 3596(b) & (c).

14

execution dates.  Counsel have found no authoritative resolution of that question. Nevertheless, there is no doubt Congress expected courts to be implementing their death sentences according to state law. This is evident from the statute's directive that a federal court sitting in a state without a death penalty must designate another state's law to follow for implementing the federal death sentence.

Cases interpreting this provision address which, if any, aspects of state law apply to the technical and other in-chamber execution procedures. These cases provide little guidance in answering whether § 3596(a) requires application of state law warrant and date-setting provisions. In *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) [hereinafter *Protocol Cases*], a sharply divided court of appeals held the Government is not required to follow aspects of state execution procedures that are less formal than state statutes and regulations. *Id*. at 112. However, two judges believed the Government was required to observe state law as set forth in state statutes and regulations. *Id*. at 133 (Rao, C.J., concurring); *id*. at 147 (Tatel, C.J., dissenting). *Protocol Cases* fully supports Mr. Vialva's contention Texas law governing the implementation of death sentences, including

15

requirements about which entity sets the execution date and when an execution date may be set controls.[8]

In sum, if § 3596(a)'s requirement that a death sentence be implemented "in the manner prescribed by the law of the State in which the sentence is imposed" extends to warrant and date-setting requirements, then Texas law governing the issuance of warrants and the setting of execution dates applies by directive of Congress. If it does not, then Congress has simply continued to remain silent on this precise question, and the long-existing judicially created law of following state law applies. Importantly, no provision in the Federal Death Penalty Act overrides the applicability of state law with respect to warrants and the setting of execution dates. Accordingly, Texas law governs this case.

---

[8] In a second recent case involving allegations the Government's in-chamber execution procedures violated § 3596(a)'s requirement that state law be followed, the Ninth Circuit determined it "need not comprehensively delineate the scope of the FDPA" to resolve the issues, and is therefore of no real assistance to the issue presented. *United States v. Mitchell*, --- F.3d ---, 2020 WL 4815961 (9th Cir. Aug. 19, 2020). Equally unhelpful is *Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020), which simply held § 3596(a) did not require the U.S. Marshal to observe state law with respect to which witnesses may attend an execution. *Id.* at 554. *See also United States v. Bourgeois*, 423 F.3d 501, 509 (5th Cir. 2005) (Congress delegated to the Department of Justice the power to determine the mode of execution).

16

II.  **TEXAS LAW REQUIRES THAT A JUDGMENT IMPOSING A DEATH SENTENCE BE IMPLEMENTED BY AN ORDER OF THE CONVICTING COURT SETTING A DATE OF EXECUTION THAT IS NO EARLIER THAN THE 91ST DAY FROM THE DAY AFTER IT IS ENTERED AND BY THE CONVICTING COURT ISSUING AN EXECUTION WARRANT**

As this Court knows, Texas is an active death penalty state. It has well-established, regularly used laws governing the implementation of death sentences, including a requirement that an execution warrant issue directing an executive officer to conduct the execution and fixing the date for it to occur. A federal court implementing a death sentence in Texas is bound to follow the material aspects of the state's warrant requirements when implementing a death sentence.

There are several material requirements of Texas law governing the setting of execution dates and issuance of execution warrants that Mr. Vialva identified and with which he asked the district court to comply. First, Texas law requires that a court enter an order setting the date of an execution. *See* Tex. Code Crim. Proc. art. 43.141. Second, Texas law requires that "[a]n execution date may not be [set] earlier than the 91st day after the date the convicting court enters the order setting the execution date." *Id*. art. 43.141(c). Third, Texas law requires that a court

17

issue an execution warrant under the seal of the court authorizing and directing the relevant executive officer to carry out the execution. Tex. Code Crim. Proc. art. 43.15(a). The warrant must "recite the fact of conviction, setting forth specifically the offense, the judgment of the court, and the time fixed for the execution." *Id.* Fourth, a certified copy of this warrant must be given to the official that it directs to conduct the execution. *Id.* Finally, a copy of the court order fixing the date and time for execution and the warrant directing the relevant official to execute must be served on counsel for the defendant. Tex. Code Crim. Proc. art. 43.141(b-1)(1) & 43.15(b)(1).

These provisions in Texas law are fully enforceable by a defendant when a trial court violates them. *See, e.g., In re Carter*, 541 S.W.3d 743, 744–45 (Tex. Crim. App. 2017) (Newell, J., concurring) ("The Texas Legislature intended Article 43.141 to provide death-penalty defendants with a significant time period within which to prepare final pleadings in either state or federal court. It clearly intended these notice requirements to facilitate that objective."); *Battaglia v. State*, 537 S.W.3d 57, 68 n.53 (Tex. Crim. App. 2017) (under the current version of Article 43.141, "notice of an execution date must be given to capital defendants" and "all

18

executions must be set at least ninety-one days in advance."). This is usually unnecessary, however, as trial courts and even the State will often act to correct illegally set execution dates of their own accord once brought to their attention. *See, e.g., Castillo v. State*, No. AP-77,074, 2018 WL 739077, at \*6 n.8 (Tex. Crim. App. Feb. 7, 2018) (State filed and the trial court granted a motion to withdraw an order setting an execution date because it "violated Article 43.141(c), which states that an execution date may not be earlier than the 91st day after the date the convicting court enters an order setting the execution date.").

## III.    THE DISTRICT COURT BELOW SET AN EXECUTION DATE IN VIOLATION OF TEXAS LAW

Mr. Vialva brought the requirements of Texas law to the district court's attention promptly after the BOP announced it was going to conduct his warrantless execution September 24, 2020.  The district court refused to follow clear Texas law governing implementation of death sentences. Instead, on September 11, 2020, it issued an order setting Mr. Vialva's execution date for September 24, 2020, just twelve days from the day after its order. In doing so, the district court violated its duty to follow controlling state law in the implementation of Mr. Vialva's death sentence. Under Texas law, the earliest date the court could have set for

Mr. Vialva's execution was December 12, 2020. Mr. Vialva maintains his execution on September 24, 2020, will be in violation of Texas law and, therefore, in violation of federal law.

## CONCLUSION

Mr. Vialva seeks the minimal relief that his execution be carried out in accordance with law. He requests the Court hold the material aspects of Texas statutory law governing the implementation of death sentences—including its date-setting and warrant requirements—govern the implementation of his death sentence. Mr. Vialva requests the Court hold the September 11, 2020, order setting September 24, 2020, as his execution date violated this governing law.  To correct this error, the Court must vacate the September 11, 2020, and order the district court to comply with all material aspects of Texas law for the implementation of a death sentence.

Respectfully submitted,

s/ Jared Tyler

JARED TYLER
Texas Bar No. 24042072

Tyler Law Firm, PLLC
P.O. Box 230804

20

Houston, Texas 77223
(832) 606-2302
jptyler@tylerlawfirm.org

SUSAN M. OTTO
Federal Public Defender
Susan_Otto@fd.org

MICHAEL LIEBERMAN
Assistant Federal Public Defender
Michael_Lieberman@fd.org

Federal Public Defender Organization
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Tel: (405) 609-5930

*Counsel for Defendant Christopher André Vialva*

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH ECF FILING STANDARDS

I certify that, on September 15, 2020, the foregoing brief was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Mr. Joseph H. Gay, Jr.
Assistant United States Attorney
United States Attorney's Office
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216-5512
(210) 384-7100
joseph.gay@usdoj.gov

21

Counsel further certifies that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

s/ Jared Tyler

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 4,156 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 pt. Century Schoolbook.

s/ Jared Tyler