No. 20-70019

_____

In the
# United States Court of Appeals for the Fifth Circuit

_____

United States of America,
*Plaintiff-Appellee*

v.

Christopher André Vialva,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
No. 6:99-cr-00070

_____

## DOCUMENTS REQUIRED BY FIFTH CIRCUIT RULE 8.1

SUSAN M. OTTO
Federal Public Defender
MICHAEL LIEBERMAN
Assistant Federal Public Defender
Federal Public Defender Organization
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Tel: (405) 609-5930

JARED TYLER
Tyler Law Firm, PLLC
P.O. Box 230804
Houston, Texas 77223
Tel: (832) 606-2302

*Counsel for Christopher André Vialva*

**\*\*CAPITAL CASE – EXECUTION DATE SEPTEMBER 24, 2020\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CAPITAL CASE |
| v. | § | NO. W-99-CR-00070(1) |
| | § | Execution Date: Sept. 24, 2020 |
| CHRISTOPHER ANDRE VIALVA. | § | |

**MOTION TO ENJOIN THE FEDERAL BUREAU OF PRISONS
AND UNITED STATES MARSHALS SERVICE FROM
EXECUTING DEFENDANT WITHOUT LEGAL AUTHORITY
AND IN VIOLATION OF FEDERAL AND TEXAS LAW
WITH BRIEF IN SUPPORT**

TO THE HONORABLE COURT:

Defendant Christopher Vialva moves this Court pursuant Title 28, United States Code, Section 1651(a) to enjoin the Federal Bureau of Prisons and the United States Marshals Service from executing Mr. Vialva September 24, 2020, in violation of federal and Texas law.  Mr. Vialva is confined in the custody of the United States.  He is housed at the Federal Correctional Complex in Terre Haute, Indiana (USP Terre Haute).

On July 31, 2020, T.J. Watson, the Warden of USP Terre Haute, delivered a letter to Christopher Vialva purporting to inform him that "a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 16, 2000." *See* Ex. 1. The letter states the Director determined Mr. Vialva should be executed September 24, 2020.

On July 31, 2020, the United States Attorney filed a "Notice Regarding Execution Date" in the district court stating, "The United States hereby notifies the Court that the Director of the Federal Bureau of Prisons, upon the direction of the Attorney General, has

scheduled the execution of Christopher Andre Vialva, in accordance with 28 C.F.R. Part 26, to take place on September 24, 2020." Notice Regarding Execution Date, *United States v. Vialva*, No. 6:99-cr-00070 (W.D. Tex. July 31, 2020) (Doc. 673).[1] Neither the judgment entered June 16, 2000, nor 28 C.F.R. Part 26, nor any other federal law presently empowers the Attorney General, United States Marshals Service, or the Bureau of Prisons to unilaterally set and carry out an individual's execution.  There are several reasons why theses federal officials and agencies lack such authority.

First, the June 16, 2000 judgment the district court entered sentencing Mr. Vialva to death—relied upon in Warden T.J. Watson's letter as the source of authority for executing Mr. Vialva on a date of the Director's choosing—is currently stayed by the judgment's own terms. Second, although the June 16, 2000 judgment permitted the Attorney General to determine the "time, place and manner of execution," that authorization—even were it thought adequate under federal law to empower execution—is long expired by the judgment's own terms. Third, federal law—including the Department of Justice regulations purportedly being relied on—requires the issuance of an execution warrant in order for a United States Marshals to lawfully execute a person sentenced to death by the judgment of a federal court, and no such warrant or order directing the execution to occur has issued by the Court. Fourth, the Bureau of Prisons'

---

[1] Counsel received notice of this filing August 14, 2020. *See* Ex. 2.  It appears the undersigned counsel was removed from the Court's Electronic Case filing system.  Counsel has been advised the problem is now resolved.

threatened action does not conform to Texas law implementing death sentences, a requirement of both federal law and the terms of the June 16, 2000 judgment.

## I.    THERE IS PRESENTLY A STAY OF EXECUTION IN PLACE

The June 16, 2000, judgment provided that, "[i]f an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals." Judgment in a Criminal Case at 2, *United States v. Vialva*, No. 6:99-cr-00070 (W.D. Tex. June 16, 2000) (Doc. 289) [hereinafter "Judgment"]. Mr. Vialva appealed his convictions and sentences thereby staying the judgment pending further order of the district court. *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002). No further order ever issued from the district court. Accordingly, the district court's June 16, 2000, judgment is currently stayed by its own terms, and the Director of the Federal Bureau of Prisons may not act in contravention of it.

## II.    THE JUNE 16, 2000, JUDGMENT DOES NOT AUTHORIZE THE ATTORNEY GENERAL OR BUREAU OF PRISONS TO FIX SEPTEMBER 24, 2020, AS THE DATE OF EXECUTION

The June 16, 2000, judgment provided that the Attorney General determine the "time, place and manner of execution," but it did so only expressly "provided [that] the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment." Judgment at 2. As it is well past 90 days from June 16, 2000, this delegation of authority to the Attorney General in the judgment is long expired. The June 16, 2000, judgment therefore provides no authority for the Attorney General or the BOP to determine the time, place, and manner of execution.

3

**III.    UNDER FEDERAL LAW, THE MARSHAL IS NOT EMPOWERED TO SUPERVISE AN EXECUTION ABSENT AN EXECUTION WARRANT OR ORDER FROM THE COURT OF JUDGMENT FIXING THE DATE OF EXECUTION AND DIRECTING THE MARSHAL TO CARRY IT OUT**

Federal law requires the issuance of a warrant to empower and direct a marshal to carry out or supervise an execution. Historically, there was some confusion about how sentences of death pronounced in federal judgments were to be implemented, as Congress had not prescribed any rules governing them beyond specifying that "the manner of inflicting the punishment of death, shall be by hanging the person convicted by the neck until dead." Crimes Act of 1790, ch. 9, § 33, 1 Stat. 112, 119. Specifically, the confusion was about whether the court of judgment or the President would issue a warrant or order fixing a date of execution and directing a marshal to conduct it. What was never in dispute was that a warrant or order must issue.[2]

In 1818, United States Attorney General Wirt wrote to Secretary of State John Quincy Adams asking him to bring to President James Monroe's attention the need to issue

---

[2] In the case of Thomas Bird, the first federal execution since the establishment of the federal courts, the Hon. David Sewall issued a "Writ or Warrant of Execution from the District Court to the Marshall" to carry out Thomas Bird's death sentence "at the Time mentioned in the Judgment . . . ;" Mr. Bird was executed June 25, 1790. See "To George Washington from Thomas Bird, 5 June 1790," n.1, Founders Online, Nat. Archives, available at https://founders.archives.gov/documents/Washington/05-05-02-0299. (last visited Aug. 1, 2020) [Original source: The Papers of George Washington, Presidential Series, vol. 5, 16 January 1790–30 June 1790, ed. Dorothy Twohig, Mark A. Mastromarino, and Jack D. Warren. Charlottesville: University Press of Virginia, 1996, pp. 478–481.] Similarly, in the last execution carried out before the Supreme Court invalidated death penalty statutes in *Furman v. Georgia*, 408 U.S. 238 (1972), the district court ordered, on November 2, 1963, that "subject to interposition of executive clemency, said imposed death sentence by hanging scheduled for January 15, 1963 at approximately 5:30 a.m. at Iowa State Penitentiary at Fort Madison, Iowa." Docket Sheet, *United States v. Victor Feguer*, No. 7-6031 (N.D. Iowa).

a warrant of execution for individuals sentenced to death by a federal court in Maryland. 1 U.S. Op. Att'y. Gen. 228 (1818). Supreme Court Justice Duvall, a former Maryland state court judge, had written to Attorney General Wirt because he heard President Monroe believed that it was the court's duty "to fix the day for the execution." *Id*. Justice Duvall thought it was the President's duty to issue a warrant in that particular case, because the law of Maryland required its Governor, rather than its courts, to issue execution warrants. *Id*.

Noting that there was no law passed by Congress on the subject, Attorney General Wirt observed "that the courts of the United States have adopted, in this particular, the practice of the State courts in which they hold their sessions, and these are various: death-warrants from the governor being required in several of the States; and in others the courts fixing the day." *Id*. Attorney General Wirt explained while it would be "desirable that there should be a uniform rule to guide the conduct of the President in this respect," only Congress could prescribe such a rule. *Id*. Attorney General Wirt concluded that as long as the courts were following state law for the implementation of death sentences, "the President must, of necessity, to give effect to our laws, follow that which the courts have adopted: that is, issue warrants for execution in all cases where they are made necessary by the practice of the State in which the sentence is passed." *Id*.

Thus, near the founding of the Nation, the judicially developed rule for implementing federal executions emerged that, when Congress has been silent, executions must be implemented in the manner prescribed by state law, *including that state's warrant*

5

*requirements*.[3] For death judgments from federal courts sitting in jurisdictions where state law required the court to order the execution and fix the day, the federal court would issue an execution warrant or order. For death judgments from federal courts sitting in jurisdictions where state law required the governor to issue an execution warrant, the President would be required to issue an execution warrant fixing the day and directing a marshal to conduct the execution.

Although Congress has remained silent on this specific question, it has generally adopted the long-established rule of implementing federal death sentences in the same manner as the state in which they sit: "When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The same rules governing how executions are implemented expressed by Attorney General Wirt in 1818 still apply today. As historical practice and Attorney General Wirt's opinion make clear, it is the order or warrant issued by the court or, where necessary to conform to

---

[3] The circumstances prompting Justice Duvall to inquire of the Attorney General were quite dire. Attorney General Wirt reported that "the case has become one of great emergency; for the convicts, finding that they are not to be pardoned, have become desperate, and have once actually broken the prison and made their escape: but they have been retaken. They will, however, unquestionably attempt it again, and probably with more success, unless they should be guarded at an enormous expense to the United States." 1 U.S. Op. Att'y. Gen. 228 (1818). Despite the dire circumstances, the judiciary steadfastly adhered to the warrant requirements of Maryland state law, causing Attorney General Wirt to convey to the Secretary of State "the necessity of drawing the President's immediate attention to this subject." *Id*. at 229.

state law, by the President, that determines and fixes the date for "[w]hen the sentence is to be implemented." *Id*.

The Department of Justice's regulations are consistent with this understanding. In 1993, the Department issued rules for "Implementation of Death Sentences in Federal Cases." These are the same rules the United States Attorney cited in the "Notice Regarding Execution Date" filed with the district court. *See* 58 Fed. Reg. 4898-01 (Jan. 19, 1993) (codified at 28 C.F.R. pt. 26). The rules went into effect February 18, 1993, and clearly reflect the Department's understanding that the Bureau of Prisons' authority to execute under a marshal's supervision derives from the federal court directing it to occur.

Section 26.2 of the regulations, entitled "Proposed Judgment and Order," provides, "Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order. " 28 C.F.R. § 26.2(a). The regulations further provide, "The attorney for the government shall append to the proposed Judgment and Order a Return by which the designated United States Marshal may inform the court that the sentence of death has been executed." *Id*. § 26.2(b). The rules unambiguously require a warrant or order of the court directing a marshal to conduct the execution.

In response to a comment during the rulemaking process challenging the Department's Congressional authority to make the rules, the Department stated that no such problem existed. The Department maintained its rules were not based on Congressional authorization, but depended on an execution warrant or court order:

As for the Justice Department's "delegated authority," the Department does not need explicit authority to issue regulations establishing death penalty procedures. The Department is authorized to rely on the authority of the federal courts, acting pursuant to the All Writs Act, 28 U.S.C. 1651(a), *to order that their sentences be implemented*. Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.

58 Fed. Reg. 4898-01, 4899-900 (emphasis added). The Department did not need Congress to delegate authority to set execution dates because its authority came from the courts when they issued the necessary orders fixing the date and directing the execution to occur. Thus, the regulations "direct[] government attorneys to seek a court order" that empowers and directs a marshal to conduct the execution. 58 Fed. Reg. 4898-01, 4900.

No order was sought or obtained by the United States from the court ordering implementation of the death sentence for Mr. Vialva. No such order was entered by the district court.

Because the June 16, 2000, judgment does not supply the necessary authority to execute the death sentence in this case, no marshal has been empowered by any court to carry out or supervise Mr. Vialva's execution. Neither the Attorney General nor the Bureau of Prisons has any power to direct a marshal to conduct an execution of any individual. In this case, *see infra*, only the court has that authority under federal law. Accordingly, the Bureau of Prisons presently has no legal authority to execute Mr. Vialva on September 24, 2020, and it should be enjoined from doing so to prevent a lawless execution.

## IV.   THE BUREAU OF PRISONS' ACTIONS DO NOT CONFORM TO TEXAS LAW AS REQUIRED BY FEDERAL LAW AND THE JUNE 16, 2000, JUDGMENT

The June 16, 2000, judgment requires that Mr. Vialva's execution be carried out "in the manner prescribed by the laws of Texas." Judgment at 2. This conforms to federal law, discussed *supra*, requiring that death sentences be "implement[ed] . . . in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).[4] The Bureau of Prions' expressed intent to execute Mr. Vialva on September 24, 2020, disregards Texas law that governs the implementation of death sentences, including statutory warrant requirements, in derogation of federal law and the June 16, 2000 judgment. *See In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 135 (D.C. Cir. 2020) (Rao, C.J., concurring), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). ("In this politically charged area, Congress enacted a federalist scheme, incorporating state law as to the 'manner' of death penalty implementation, but only for those execution procedures enacted or promulgated by states as part of their binding law.").

First, Texas law requires that a *court* enter an order setting the date of an execution to effectuate a death sentence. *See* Tex. Code Crim. Proc. art. 43.141. Second, Texas law requires that "[a]n execution date may not be earlier than the 91st day after the date the convicting court enters the order setting the execution date." *Id*. art. 43.141(c). Third, Texas law requires that a court issue an execution warrant under the seal of the court authorizing

---

[4] The Attorney General has tacitly acknowledged the applicability of the statute and its impact on the execution process. In an apparent effort to circumvent the statute, the Attorney General has proposed a regulation through the Administrative Procedures Act process. See Ex. 3, 85 Fed. Reg. 47324 (Aug. 5, 2020).

and directing the relevant authority to carry out the execution. <u>Tex. Code Crim. Proc. art. 43.15(a)</u>. The warrant must "recite the fact of conviction, setting forth specifically the offense, the judgment of the court, and the time fixed for the execution." *Id*. A certified copy of this warrant must be given to the official that it directs to conduct the execution. *Id*. Additionally, a copy of the court order fixing the date and time for execution and the warrant directing the relevant official to execute must be served on counsel for the defendant. <u>Tex. Code Crim. Proc. art. 43.141(b-1)(1)</u> & <u>43.15(b)(1)</u>. *See also In re Carter*, <u>541 S.W.3d 743, 744</u> 45 (Tex. Crim. App. 2017) (Newell, J., concurring) ("The Texas Legislature intended Article 43.141 to provide death-penalty defendants with a significant time period within which to prepare final pleadings in either state or federal court. It clearly intended these notice requirements to facilitate that objective.").

None of these things have occurred in this case. There has been no court order setting a date of execution that conforms to Texas law, as required by federal law and practice since the founding of the country. No execution warrant has issued under the court's seal directing the relevant official to conduct the execution on a date and time specified, and no lawyers for Mr. Vialva have been served with these papers. Any execution occurring in Texas under the circumstances present here would be blatantly illegal.

## CONCLUSION

The deficiencies in the procedure adopted by the Director of the Bureau of Prisons, apparently at the behest of the Attorney General of the United States, are contrary to controlling federal law and Texas state law.  These are not merely technical or clerical

errors. Mr. Vialva was provided with a letter from the Warden informing him he would be executed in 55 days. The difference between the Director's selection of an execution and a date conforming to the requirements of Texas law are patently substantial. The injury to Mr. Vialva resulting from the violation of the law is quintessentially irreparable. Counsel request this Court enter an order enjoining the Bureau of Prisons from executing Christopher Vialva until it has the legal authority to do so and in a manner that comports with federal and Texas law.

Respectfully submitted,

s/Susan M. Otto
SUSAN M. OTTO
Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN
Oklahoma Bar #32694 (pro hac vice forthcoming)
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Electronic mail: Susan_Otto@fd.org;
Michael_Lieberman@fd.org

COUNSEL FOR DEFENDANT
CHRISTOPHER ANDRE VIALVA

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
Counsel for Plaintiff

Rob Owen
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Suite 1056
Chicago, IL 60604

John Carpenter
Assist. Federal Public Defender
1331 Broadway, Ste. 400
Tacoma, WA 98402
Counsel for Brandon Bernard

s/Susan M. Otto
SUSAN M. OTTO



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Terre Haute, Indiana*

July 31, 2020

Mr. Christopher Andre Vialva
Reg. No. 91909-080
Special Confinement Unit
United States Penitentiary
Terre Haute, Indiana 47802

Dear Mr. Vialva:

The purpose of this letter is to inform you that a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on June 16, 2000, by Judge Walter S. Smith, Jr. of the United States District Court for the Western District of Texas.  This letter will serve as official notification that pursuant to Title 28, Code of Federal Regulations, Section 26.3(a)(1), the Director of the Federal Bureau of Prisons has set September 24, 2020, as the date for your execution by lethal injection.

Under Title 28, Code of Federal Regulations, Sections 1.1 and 1.10, if you wish to seek commutation of sentence or reprieve from the President, petitions may be emailed directly to the DOJ Pardon Attorney at USPARDON.Attorney@usdoj.gov.  If email is not available, petitions may be mailed to the Office of the Pardon Attorney, U.S. Department of Justice, 950 Pennsylvania Avenue, RFK Main Justice Building, Washington, D.C. 20530.  The Office of the Pardon Attorney is responsible for receiving and processing on behalf of the President all requests for clemency.  If you wish to apply for commutation of sentence your petition must be filed within 30 days of the date you receive this notice.

Soon, I will come to your housing unit to personally discuss with you many of the details surrounding the execution.  At that time, I will be available to answer any questions you may have regarding the execution process.

Sincerely,

T.J. Watson
Complex Warden

cc:     The Honorable Alan D. Albright, Judge, United States District Court
        (W.D. Texas)
        Mr. Barry Knight, Clerk of the Court (W.D. Texas)
        Mr. John F. Bash, United States Attorney (W.D. Texas)
        Mr. Joseph H. Gay, Jr., Assistant United States Attorney (W.D. Texas)
        Mr. Mark Frazier, Assistant United States Attorney (W.D. Texas)
        Ms. Susan Otto, Federal Public Defender (W.D. Oklahoma)
        Mr. Josh Minkler, United States Attorney (S.D. Indiana)
        Mr. Joseph "Dan" McClain, U.S. Marshal (S.D. Indiana)
        Mr. Ethan P. Davis, Acting Assistant Attorney General, Civil Division
        Mr. Paul Perkins, Office of the Assistant Attorney General, Civil Division

Exhibit 1 - Page 1 of 2

Exhibit 1 - Page 2 of 2

**Susan Otto**

| | |
|---|---|
| **From:** | TXW_USDC_Notice@txwd.uscourts.gov |
| **Sent:** | Friday, August 14, 2020 1:30 PM |
| **To:** | cmecf_notices@txwd.uscourts.gov |
| **Subject:** | Activity in Case 6:99-cr-00070-ADA USA v. Vialva et al Advisory to the Court |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court [LIVE]

## Western District of Texas

## Notice of Electronic Filing

The following transaction was entered by Frazier, Mark on 07/31/2020 at 5:01:42 PM CDT and filed on 07/31/2020

| | |
|---|---|
| **Case Name:** | USA v. Vialva et al |
| **Case Number:** | 6:99-cr-00070-ADA |
| **Filer:** | USA |
| **WARNING: CASE CLOSED on 12/13/2018** | |
| **Document Number:** | 673 |

**Docket Text:**
**Advisory to the Court *Regarding Execution Date* by USA as to Christopher Andre Vialva (Frazier, Mark)**

**6:99-cr-00070-ADA- 1 Notice has been electronically mailed to:**

Susan M. Otto    susan_otto@fd.org, Pam_Kennedy@fd.org

Jared Tyler    jptyler@tylerlawfirm.org

**6:99-cr-00070-ADA- 1 Notice has been delivered by other means to:**

John Robert Carpenter
Federal Public Defender
1331 Broadway, Suite 400
Tacoma, WA 98402

Exhibit 2 - Page 1 of 2

Joseph H. Gay ,
Assistant U.S. Attorney
601 N.W. Loop 410
Suite 600
San Antonio, TX 78216

Mark Frazier
U.S. Attorney's Office
800 Franklin
Suite 280
Waco, TX 76701

Michael R. Hardy
Assistant United States Attorney
601 NW Loop 410
Suite 600
San Antonio, TX 78216-5512

Robert C. Owen
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Suite 1056
Chicago, IL 60604

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1080075687 [Date=7/31/2020] [FileNumber=23684368-0] [06fb613dcbbc7e64a4a86f27b9413885374804e3e4f46d0f837dfc218d4c1af3d4905780b79209f1e486e74a27979b3e9102e2238e17b88e536a123683c49b6e]]

*This is a re-generated NEF. Created on 8/14/2020 at 1:30 PM CDT*

2

Exhibit 2 - Page 2 of 2

determining the character, amount, and allocation of deductions in excess of gross income succeeded to by a beneficiary on the termination of an estate or non-grantor trust.

**DATES:** The teleconference public hearing, originally scheduled for Wednesday, August 12, 2020 at 10 a.m. is cancelled.

**FOR FURTHER INFORMATION CONTACT:** Regina Johnson of the Publications and Regulations Branch, Legal Processing Division, Associate Chief Counsel (Procedure and Administration) at (202) 317–5177 (not a toll-free number) or at *publichearings@irs.gov.*

**SUPPLEMENTARY INFORMATION:** A proposed rule;notice of public hearing that appeared in the **Federal Register** on July 17, 2020 (85 FR 43512) announced that a public hearing was scheduled for Wednesday, August 12 at 10 a.m. as a teleconference public hearing, Internal Revenue Service Building, 1111 Constitution Avenue NW, Washington, DC. The subject of the public hearing is under section 67(g) of the Internal Revenue Code.

The public comment period for these regulations expired June 25, 2020. The notice of proposed rulemaking and notice of hearing instructed those interested in testifying at the public hearing to submit an outline of the topics to be discussed. The outline of topics to be discussed was due by July 29, 2020. As of July 29, 2020, no one has requested to speak. Therefore, the public hearing scheduled for August 12, 2020 at 10:00 a.m. is cancelled.

**Martin V. Franks,**

*Branch Chief, Publications and Regulations Branch, Legal Processing Division, Associate Chief Counsel, (Procedure and Administration).*

[FR Doc. 2020–17126 Filed 8–4–20; 8:45 am]

**BILLING CODE 4830-01-P**

---

**DEPARTMENT OF JUSTICE**

**Office of the Attorney General**

**28 CFR Part 26**

**[Docket Number OAG 171; AG Order No. 4749–2020]**

**RIN 1105–AB63**

**Manner of Federal Executions**

**AGENCY:** Office of the Attorney General, Department of Justice.

**ACTION:** Proposed rule.

---

**SUMMARY:** The Department of Justice is proposing to amend regulations to authorize implementation of a sentence in a Federal capital case in any manner consistent with Federal law and to make other amendments.

**DATES:** Electronic comments must be submitted and written comments must be postmarked or otherwise indicate a shipping date on or before September 4, 2020. The electronic Federal Docket Management System at *www.regulations.gov* will accept electronic comments until 11:59 p.m. *Eastern Time on that date.*

**ADDRESSES:** If you wish to provide comments regarding this rulemaking, you must submit comments, identified by the agency name and referencing Docket No. OAG 171, by one of the two methods below.

• *Federal eRulemaking Portal: http:// www.regulations.gov.* Follow the website instructions for submitting comments.

• *Mail:* Paper comments that duplicate an electronic submission are unnecessary. If you wish to submit a paper comment in lieu of electronic submission, please direct the mail/ shipment to: Laurence E. Rothenberg, Deputy Assistant Attorney General, Office of Legal Policy, U.S. Department of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530. To ensure proper handling, please reference the agency name and Docket No. OAG 171 on your correspondence. Mailed items must be postmarked or otherwise indicate a shipping date on or before the submission deadline.

**FOR FURTHER INFORMATION CONTACT:** Laurence E. Rothenberg, Deputy Assistant Attorney General, Office of Legal Policy, U.S. Department of Justice, (202) 514–3116.

**SUPPLEMENTARY INFORMATION:**

**I. Public Participation**

Interested persons are invited to participate in this rulemaking by submitting written data, views, or arguments on all aspects of this rule via one of the methods and by the deadline stated above. All comments must be submitted in English, or accompanied by an English translation. The Department of Justice ("Department" or "DOJ") also invites comments that relate to the economic, environmental, or federalism effects that might result from this rule. Comments that will provide the most assistance to the Department in developing these procedures will reference a specific portion of the rule, explain the reason for any recommended change, and include data, information, or authority that support such recommended change.

Please note that all comments received are considered part of the public record and made available for public inspection at *www.regulations.gov.* Such information includes personally identifiable information ("PII") (such as your name, address, etc.). Interested persons are not required to submit their PII in order to comment on this rule. However, any PII that is submitted is subject to being posted to the publicly accessible *www.regulations.gov* site without redaction.

Confidential business information clearly identified in the first paragraph of the comment as such will not be placed in the public docket file. The Department may withhold from public viewing information provided in comments that it determines may impact the privacy of an individual or is offensive. For additional information, please read the Privacy Act notice that is available via the link in the footer of *http://www.regulations.gov.* To inspect the agency's public docket file in person, you must make an appointment with the agency. Please see the **FOR FURTHER INFORMATION CONTACT** paragraph above for agency contact information.

**II. Background and Purpose**

The Federal Death Penalty Act provides generally that a capital sentence in a Federal case is to be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. 3596(a). However, if the "law of the State in which the sentence is imposed" "does not provide for implementation of a sentence of death," then the statute directs the court to designate another State whose law does "provide for the implementation of a sentence of death," "and the sentence shall be implemented in the latter State in the manner prescribed by such law." *Id.*

The current execution regulations of the Department direct the attorney for the government to "file with the sentencing court a proposed Judgment and Order" stating that "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 CFR 26.2(a). The regulations further state that, except to the extent a court orders otherwise, a sentence of death shall be executed on a date and at a time and at a "federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons . . . [b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." *Id.* § 26.3(a). Furthermore, the Federal Bureau of Prisons facility for carrying out executions, located at the

Exhibit 3 - Page 1 of 4

Terre Haute correctional complex in Indiana, is equipped for carrying out executions only by lethal injection.

This proposed rule would provide the Federal Government with greater flexibility to conduct executions in any manner allowed by federal law and implement the statutory authorization in the Federal Death Penalty Act, at 18 U.S.C. 3597, that provides that State and local facilities and personnel may be used in carrying out Federal executions.

The proposed regulation would also clarify that the Attorney General has the authority to make all determinations of issues with regard to execution procedures, including designating other DOJ officials to make such determinations, in line with the Attorney General's well-established authority to manage the Department. Federal law vests all powers of components of the Department in the Attorney General and permits the Attorney General to reassign powers among the components. *See* 28 U.S.C. 509 ("All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General[.]"); 28 U.S.C. 510 (granting the Attorney General authority to delegate powers to "any other officer, employee, or agency of the Department of Justice"). When sections 3596 and 3597 of title 18 assign certain duties to a component of DOJ, those assignments are initial, default assignments. However, those duties are legally vested in the Attorney General, and because of this, the Attorney General may also assign those duties to other DOJ components, as is expressly permitted by long-standing Federal law. Sections 3596 and 3597 contain no language expressly prohibiting the Attorney General from deciding or delegating matters relating to executions.

The issues addressed in the proposed rule are manner of execution, use of State and local facilities and personnel, and other amendments.

### A. Manner of Execution

Section 3596 of title 18 provides that Federal executions are to be carried out in the manner prescribed by the law of the relevant State, and the Federal execution regulations provide that Federal executions are to be carried out by lethal injection except to the extent a court orders otherwise, 28 CFR 26.2(a)(2), 26.3(a). Execution by lethal injection is now universally authorized in States that have capital punishment, *see In re Fed. Bureau of Prisons' Execution Protocol Cases,* 955 F.3d 106, 114 (D.C. Cir. 2020) (Katsas, J., concurring) ("Every state that authorizes capital punishment uses lethal injection 'as the exclusive or primary means of implementing the death penalty.'" (quoting *Baze* v. *Rees,* 553 U.S. 35, 42 (2008) (plurality opinion))), but some States currently authorize execution by other means in certain circumstances, and more States may authorize execution by other means in the future. *See, e.g.,* Ala. Code 15–18–82.1(a) (by lethal injection but electrocution or nitrogen hypoxia may be elected); Miss. Code Ann. 99–19–51(1)–(4) (by lethal injection but by nitrogen hypoxia, electrocution, or firing squad if other methods are held unconstitutional or otherwise unavailable); Okla. Stat. tit. 22, sec. 1014 (same); Ark. Code Ann. 5–4–617(*l*) (by electrocution if execution by lethal injection is invalidated); Fla. Stat. 922.105 (by lethal injection but electrocution may be elected); *see also Bucklew* v. *Precythe,* 139 S. Ct. 1112, 1142 (2019) (Breyer, J., dissenting) (noting States permitting use of nitrogen hypoxia); *Glossip* v. *Gross,* 135 S. Ct. 2726, 2796 (2015) (Sotomayor, J., dissenting) (noting State using firing squad). One State has recently used electrocution. *See Media Advisory,* Tenn. Dep't of Corr. (Dec. 5, 2019, 7:27 p.m.), *https://www.tn.gov/correction/news/2019/12/5/media-advisory.html.* Some States also provide by law that a prisoner may choose the manner of execution from among several options in at least some circumstances. *See* Ala. Code 15–18–82.1(b); Ariz. Rev. Stat. Ann. 13–757(B); Cal. Penal Code 3604; Fla. Stat. 922.105; Ky. Rev. Stat. Ann. 431.220(1)(b); S.C. Code Ann. 24–3–530(A); Tenn. Code Ann. 40–23–114(b); Va. Code Ann. 53.1–234.

In recent U.S. Supreme Court litigation involving Eighth Amendment challenges to execution by lethal injection, nitrogen hypoxia and firing squad have been identified as potential alternative methods of execution, including by prisoners themselves, that might—or even must—be used instead of lethal injection, in particular because those methods allegedly carry a lesser risk of pain. The Supreme Court has rejected such arguments in the case of nitrogen hypoxia, in part because it has not been shown that the proffered alternative can be readily implemented by the relevant State and is less likely to cause pain. *See Bucklew,* 139 S. Ct. at 1129–33 (regarding nitrogen hypoxia); *id.* at 1142–43 (Breyer, J., dissenting) (same); *see also id.* at 1136 (Kavanaugh, J., concurring) (regarding firing squad); *Glossip,* 135 S. Ct. at 2739 (same); *id.* at 2796–97 (Sotomayor, J., dissenting) (same); *Arthur* v. *Dunn,* 137 S. Ct. 725, 733–34 (2017) (Sotomayor, J., dissenting from denial of certiorari) (discussing a prisoner's claim that the firing squad should be imposed as an alternative method in Alabama).

Nonetheless, in these cases, litigants have argued, and some jurists have noted, that there is evidence that certain alternative means of execution may be humane methods of execution if they were made available. *See Bucklew,* 139 S. Ct. at 1142–43 (Breyer, J., dissenting) ("[The petitioner] introduced into the record reports from Oklahoma and Louisiana indicating that nitrogen hypoxia would be simple and painless."); *Glossip,* 135 S. Ct. at 2797 (Sotomayor, J., dissenting) ("At least from a condemned inmate's perspective, . . . [death by shooting's] visible yet relatively painless violence may be vastly preferable[.]"); *Arthur,* 137 S. Ct. at 734 (Sotomayor, J., dissenting from denial of certiorari) ("In addition to being near instant, death by shooting may also be comparatively painless."). The Supreme Court has long held that death by firing squad and death by electrocution do not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See Wilkerson* v. *Utah,* 99 U.S. 130, 130–31, 134–35 (1878) (firing squad); *In re Kemmler,* 136 U.S. 436 (1890) (electrocution); *see also Bucklew,* 139 S. Ct. at 1125.

Furthermore, it is possible that a State in the future will provide that a manner other than lethal injection is the only authorized means of execution. Section 3596(a) would then require execution in that manner for a Federal offender sentenced in the State. The proposed rule would therefore forestall potential future arguments by prisoners in litigation that they cannot be executed under the existing regulation because the regulation does not expressly authorize execution by means other than lethal injection.

Accordingly, the proposed rule would amend the regulations to provide, in 28 CFR 26.3(a)(4), that Federal executions are to be carried out by lethal injection "or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. 3596(a)." (There is no similar change to § 26.2(a)(2) as the proposed rule proposes to rescind that section entirely, as discussed below.) The proposed rule thus ensures that the Department is authorized to use the widest range of humane manners of execution permitted by law.

### B. Use of State Facilities

The current regulations provide that a Federal execution shall occur "[a]t a

Exhibit 3 - Page 2 of 4

federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons." 28 CFR 26.3(a)(2). Under the proposed amendments to the regulation, the Government will have the authority to carry out an execution in any appropriate Federal, State, or local facility. For example, as discussed above, future situations may arise in which it is necessary to carry out an execution by some means other than lethal injection, which could be beyond the current capacities of Federal facilities.

If cases of this nature arise, the most expedient means of carrying out the execution may be to arrange for State assistance. This is expressly authorized by section 3597(a), which provides that State and local facilities and personnel may be used in carrying out Federal executions. The proposed rule provides for such use by amending the regulations through striking "federal" before "penal or correctional institution" in § 26.3(a)(2) and replacing "[b]y" with "[u]nder the supervision of" a United States Marshal in § 26.3(a)(3).

### C. Additional Amendments

The proposed rule also proposes a number of other changes to the regulations, as follows:

First, it proposes to amend § 26.1 to clarify application of the regulations in certain circumstances. It designates existing language in that section as paragraph (a), and creates new § 26.1(b) that would provide the Attorney General the flexibility to vary from the regulation in the event that applicable law (such as controlling State law) requires different procedures, stating that where applicable law conflicts with any provision of part 26, the Attorney General may vary from that provision to the extent necessary to comply with the applicable law. It also adds new § 26.1(c) to reiterate the Attorney General's authority to manage the Department's execution process, by stating that any task or duty assigned to any officer or employee of the Department of Justice under part 26 may be delegated by the Attorney General to any other officer or employee of the Department of Justice.

Second, the proposed rule would eliminate unnecessary and redundant language in the regulations by striking the entirety of § 26.2 and reserving that section for future use.

Third, the proposed rule would amend the heading of § 26.3 to replace "method" with "manner," in accordance with the language used in the statute.

Fourth, the proposed rule would clarify responsibilities for decisions about execution procedures by replacing the term "Warden" (or "Warden of the designated institution") with "Director of the Federal Bureau of Prisons or his designee" in §§ 26.3(a)(3), 26.4(a), 26.4(c)(1), 26.4(c)(4), 26.4(e), and 26.4(g), and deleting "Warden" in § 26.4(b) and in the first line of § 26.4(c).

Fifth, the proposed rule would amend § 26.3(a)(3) to authorize the Director of the Federal Bureau of Prisons to choose the personnel to carry out the sentence. To do so, the proposed rule strikes, in § 26.3(a)(3), "the Marshal and".

Sixth, the proposed rule would in § 26.3(a)(3) clarify that qualified personnel must be used for any manner of execution.

Seventh, the proposed rule makes an edit to § 26.4(b) to clarify that "the institution" refers to the correctional institution that has been designated in § 26.3(a)(2).

Eighth, an additional edit to § 26.4(b) clarifies that the Director has the discretion to grant a prisoner's request to visit with additional persons as the Director deems proper.

Ninth, to clarify the responsibility of the Marshal regarding notification to the sentencing court that the execution has been carried out, in § 26.4(g), the proposed rule states that the Marshal "shall ensure that appropriate notice of the sentence's implementation is filed with the sentencing court," replacing the existing requirement that the Marshal sign a return referenced in § 26.2(b).

Tenth, the proposed rule would extend to non-DOJ employees (including contractors) existing protections that currently apply to DOJ employees, allowing them not to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the DOJ employee. The new language is almost the exact language on this matter from 18 U.S.C. 3597(b).

### III. Regulatory Review

#### A. Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this proposed regulation and by approving it certifies that this proposed regulation would not have a significant economic impact on a substantial number of small entities because it concerns the manner of implementing Federal capital sentences.

#### B. Executive Orders 12866, 13563, and 13771—Regulatory Planning and Review

This proposed regulation has been drafted and reviewed in accordance with Executive Order 12866, "Regulatory Planning and Review," section 1(b), "The Principles of Regulation," and Executive Order 13563, "Improving Regulation and Regulatory Review." The Office of Information and Regulatory Affairs has determined that this proposed rule is a "significant regulatory action" under Executive Order 12866, section 3(f).

This proposed rule, if made final, may entail financial costs if, at some point in the future, a prisoner is to be executed by a manner other than lethal injection. The Department would then either have to provide its own system for an execution by a manner other than lethal injection or pay for the use of State or local facilities and personnel to perform the execution. In such a circumstance, the cost would likely be the development of Federal capabilities to implement such a sentence or payment for the use of State or local facilities and personnel.

This proposed rule is not expected to be a regulatory action for purposes of Executive Order 13771.

#### C. Executive Order 13132—Federalism

This proposed regulation will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Section 3597 of title 18 provides that the Federal Government "may use appropriate State or local facilities for the purpose [of implementing a sentence of death], may use the services of an appropriate State or local official or of a person such an official employs for the purpose, and shall pay the costs thereof." The statutory authorization and the proposed rule to implement it are directed at the Federal Government. Neither the statute nor the proposed rule imposes any requirements for action or costs on States. Therefore, in accordance with Executive Order 13132, it is determined that this proposed rule does not have sufficient federalism implications to warrant the preparation of a federalism assessment.

#### E. Executive Order 12988—Civil Justice Reform

This proposed regulation meets the applicable standards set forth in sections 3(a) and 3(b)(2) of Executive Order 12988.

Exhibit 3 - Page 3 of 4

## F. Unfunded Mandates Reform Act of 1995

This proposed rule will not result in the expenditure by State, local, and Tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions were deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

## G. Congressional Review Act

This proposed rule is not expected to be a major rule as defined by the Congressional Review Act, 5 U.S.C. 804. This rule will not result in an annual effect on the economy of $100 million or more; a major increase in costs or prices; or significant adverse effects on competition, employment, investment, productivity, or innovation, or on the ability of United States-based enterprises to compete with foreign-based enterprises in domestic and export markets.

## List of Subjects in 28 CFR Part 26

Law enforcement officers, Prisoners.

Accordingly, for the reasons stated in the preamble, part 26 of chapter I of title 28 of the Code of Federal Regulations is proposed to be amended as follows:

## PART 26—DEATH SENTENCES PROCEDURES

■ 1. The authority citation for part 26 is revised to read as follows:

**Authority:** 5 U.S.C. 301; 18 U.S.C. 4001(b), 4002, 3596, 3597; 28 U.S.C. 509, 510, 2261, 2265.

■ 2. Amend § 26.1 by:
■ a. Designating the existing language as paragraph (a); and
■ b. Adding paragraphs (b) and (c) to read as follows:

### § 26.1  Applicability.

\* \* \* \* \*

(b) Where applicable law conflicts with any provision of this part, the Attorney General may vary from that provision to the extent necessary to comply with the applicable law.

(c) Any task or duty assigned to any officer or employee of the Department of Justice by this part may be delegated by the Attorney General to any other officer or employee of the Department of Justice.

### § 26.2  [Removed and Reserved]

■ 3. Remove and reserve § 26.2.
■ 4. Amend § 26.3 by revising the section heading and paragraphs (a)(2), (3), and (4) to read as follows:

### § 26.3  Date, time, place, and manner of execution.

(a) \* \* \*

(2) At a penal or correctional institution designated by the Director of the Federal Bureau of Prisons;

(3) Under the supervision of a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional qualified personnel selected by the Director of the Federal Bureau of Prisons or his designee and acting at the direction of the Marshal; and

(4) By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons, or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. 3596(a).

\* \* \* \* \*

■ 5. Amend § 26.4 by revising paragraphs (a), (b), (c), (e), and (g) to read as follows:

### § 26.4  Other execution procedures.

(a) The Director of the Federal Bureau of Prisons or his designee shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case the Director of the Federal Bureau of Prisons or his designee shall notify the prisoner as soon as possible.

(b) Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisers (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution designated in § 26.3(a)(2). Upon approval of the Director of the Federal Bureau of Prisons, the prisoner may be granted access to such other persons as the prisoner may request.

(c) In addition to the Marshal, the following persons shall be present at the execution:

(1) Necessary personnel selected by the Marshal and the Director of the Federal Bureau of Prisons or his designee;

(2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;

(3) Not more than the following numbers of persons selected by the prisoner:

(i) One spiritual adviser;
(ii) Two defense attorneys; and

(iii) Three adult friends or relatives; and

(4) Not more than the following numbers of persons selected by the Director of the Federal Bureau of Prisons or his designee:

(i) Eight citizens; and

(ii) Ten representatives of the press.

\* \* \* \* \*

(e) The Director of the Federal Bureau of Prisons or his designee should notify those individuals described in paragraph (c) of this section as soon as practicable before the designated time of execution.

\* \* \* \* \*

(g) After the execution has been carried out, qualified personnel selected by the Director of the Federal Bureau of Prisons or his designee shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and Director of the Federal Bureau of Prisons or his designee of his determination. Upon notification of the prisoner's death, the Marshal shall ensure that appropriate notice of the sentence's implementation is filed with the sentencing court.

\* \* \* \* \*

■ 6. Amend § 26.5 by revising the first sentence to read as follows:

### § 26.5  Attendance at or participation in executions by Department of Justice personnel.

No officer or employee of the Department of Justice or a State department of corrections, or any employee providing services to those departments under contract, shall be required, as a condition of that employment or contractual obligation, to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or, if the employee is a medical professional, if the employee considers such participation or attendance contrary to medical ethics.

\* \* \*

Dated: July 7, 2020.

**William P. Barr,**

*Attorney General.*

[FR Doc. 2020–15039 Filed 8–4–20; 8:45 am]

**BILLING CODE 4410–19–P**

Exhibit 3 - Page 4 of 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | CAPITAL CASE |
| v. | § | NO. W-99-CR-00070(1) |
| | § | Execution Date: Sept. 24, 2020 |
| CHRISTOPHER ANDRE VIALVA. | § | |

## ORDER

This matter is before the Court on the Motion of Defendant Christopher Andre Vialva requesting this Court enter an order enjoining the Federal Bureau of Prisons and United States Marshals Service from conducting his execution. Mr. Vialva maintains the Notice of Execution, filed in this Court July 31, 2020, was entered without legal authority and in violation of both Federal and Texas State law. The execution of Mr. Vialva was ordered by the Attorney General of the United States. Having considered said Motion and for good cause shown, the Court grants Defendant's Motion. The Attorney General of the United States, the Federal Bureau of Prisons, and the United States Marshals Service are enjoined from proceeding with the execution of Christopher Andre Vialva, Bureau of Prisons Register Number 91909-080, until further Order of this Court.

It is so ordered this _____ day of August, 2020.

 

 

HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

    v.

CHRISTOPHER ANDRE VIALVA,
    Defendant.

**CAPITAL CASE**
NO. W-99-CR-00070(1)-ADA
Execution Date: Sept 24, 2020

**GOVERNMENT'S RESPONSE TO MOTION TO ENJOIN
THE BUREAU OF PRISONS AND U.S. MARSHALS SERVICE
FROM EXECUTING DEFENDANT**

Defendant Christopher Vialva has filed a motion pursuant to 28 U.S.C. § 1651(a) (the All

Writs Act) to enjoin the Bureau of Prisons ("BOP") and the U.S. Marshals Service from carrying

out his execution on September 24, 2020. Vialva contends that (1) this Court stayed his execution

in its judgment dated June 16, 2000, and has never lifted the stay; (2) the judgment does not allow

the Attorney General to set his execution date; (3) the U.S. Marshals Service is not permitted to

supervise his execution until this Court issues a warrant authorizing it to do so; and (4) BOP lacks

authority to execute him because it has failed to follow pre-execution procedures required by Texas

law. Each of Vialva's claims lacks merit, and he does not come close to satisfying the stringent

standards for enjoining a scheduled execution. His motion for an injunction should be denied.

**BACKGROUND**

**I.     The Murders of Todd and Stacie Bagley**

In 1999, Vialva, Brandon Bernard, and three other members of a street gang in Killeen,

Texas, carjacked and murdered Todd and Stacie Bagley. *United States v. Bernard*, 299 F.3d 467,

471–73 (5th Cir. 2002). Vialva and fellow gang members initially developed a plan to abduct and

rob a motorist at gunpoint, lock the victim in the trunk of his car, use the victim's bank card to

make ATM withdrawals, and then abandon the vehicle (with the victim still locked in the trunk) in a remote area. *Id.* at 471.

Vialva and his accomplices drove around town searching for a suitable victim, and eventually chose Todd and Stacie Bagley, youth ministers visiting Killeen from Iowa. 299 F.3d at 471-72. While Todd used a pay phone and his wife, Stacie, waited in their car, the group approached Todd and asked for a ride. *Id.* at 472. Todd agreed, and Vialva and two of his accomplices got into the back seat of the Bagleys' car. *Id.* After giving Todd directions, Vialva pulled a handgun on Todd and stated that "the plans have changed." *Id.* The trio then robbed the Bagleys, forced the Bagleys into the trunk of their car, and drove around in the car for several hours attempting to empty the Bagleys' bank accounts from multiple ATMs and pawn Stacie's wedding ring. *Id.*

While locked in the trunk, the Bagleys spoke to Vialva's accomplices through the car's rear panel, discussing their faith and explaining that God's blessings were available to anyone. 299 F.3d at 472. Later, after one accomplice told Vialva that he no longer wanted to go through with the crime, Vialva "insisted on killing the Bagleys and burning their car to eliminate the witnesses" and any incriminating fingerprints. *Id.* Vialva drove to his home, where he retrieved a ski mask and clothing. *Id.* Meanwhile, the Bagleys pleaded with Vialva's accomplices for their lives. *Id.*

When Bernard and another gang member rejoined the group, "Vialva repeated that he had to kill the Bagleys because they had seen his face." 299 F.3d at 472. Bernard purchased lighter fluid, *id.*, and Vialva, Bernard, and two other gang members then drove the Bagleys' car (with the Bagleys still in the trunk) and Bernard's car to a remote location on the Fort Hood military installation. 299 F.3d at 472–73. Bernard helped pour lighter fluid in the Bagleys' car, while the Bagleys sang and prayed in the trunk. *Id.* at 472. Stacie said, "Jesus loves you" and "Jesus, take

care of us." *Id.* Vialva replied, "Shut the fuck up, bitch, I'm about to open the trunk and I don't want to hear that shit." ECF No. 312 at 225. He then put on his mask, ordered the trunk opened, and shot the Bagleys. *Id.* at 472–73. Vialva shot Todd in the head at close range, killing him instantly. But his shot to the side of Stacie's face merely knocked her unconscious. *Id.* Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. *Id.* at 473.

The gang's escape was foiled when Bernard's car slid off the road into a muddy ditch 50 yards away from the Bagley's burning car. People responding to the fire saw the gang members hastily throwing items into a wooded area beside the road; law enforcement officers would later find the murder weapon, the second gun, cans of lighter fluid, and other evidence in that area. ECF No. 314 at 209–12; ECF No. 312 at 49, 76–88; ECF No. 311 at 41, 60–62, 89–92. The four men were arrested after first responders discovered the Bagleys' charred bodies in the car's trunk. 299 F.3d at 473.

## II.    Trial and Direct Appeal

A jury found Vialva guilty on three capital counts: carjacking resulting in death, in violation of 18 U.S.C. § 2119; conspiracy to murder the Bagleys, in violation of 18 U.S.C. §§ 1111, 1117; and murdering the Bagleys within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1111. *See* 299 F.3d at 474. Following a capital sentencing hearing, the jury unanimously and beyond a reasonable doubt found several statutory and non-statutory aggravating factors for each count, and further determined that the aggravating circumstances outweighed any mitigating factors. *Id.* The jury unanimously recommended that Vialva be sentenced to death, and the district court imposed that sentence pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq.* 299 F.3d at 474. As relevant here, the district court's judgment of conviction and sentence stated:

… As to [the capital counts], the defendant is hereby committed to the custody of the U.S. Bureau of Prisons until exhaustion of the procedures for appeal of the judgment of conviction and review of the sentences. Upon exhaustion of appeals, the sentence of DEATH will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas.

The time, place and manner of execution are to be determined by the Attorney General, provided the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment. If an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals.

ECF No. 289 at 2.

The Fifth Circuit affirmed "the judgment[] of the district court" on direct appeal. 299 F.3d at 489. The court of appeals subsequently denied rehearing *en banc* and issued its mandate on October 23, 2002. ECF No. 342. The Supreme Court denied certiorari. *Vialva v. United States*, 539 U.S. 928 (2003).

### III.    Post-Conviction Proceedings

In 2004, Vialva moved under 28 U.S.C. § 2255 to vacate his death sentence. ECF No. 372. This Court denied his § 2255 motion and denied his request for a certificate of appealability ("COA"). ECF No. 449. The Fifth Circuit likewise denied a COA, *United States v. Bernard*, 762 F.3d 467, 483 (5th Cir. 2014), and the Supreme Court denied certiorari, *Vialva v. United States*, 136 S. Ct. 1155 (2016).

In 2017, Vialva filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking relief from the district court's judgment denying his § 2255 motion. ECF No. 553. He claimed that Judge Smith, who had presided over the trial and denied Vialva's § 2255 motion, was unfit to preside over the § 2255 proceedings. This Court (Judge Yeakel) dismissed Vialva's Rule 60(b)(6) motion for lack of jurisdiction as an uncertified successive § 2255 motion, and denied a COA. ECF No.

570. The Fifth Circuit denied a COA, *United States v. Vialva*, 904 F.3d 356, 358 (5th Cir. 2018), and the Supreme Court denied certiorari, *Vialva v. United States*, 140 S. Ct. 860 (2020).

## IV.    Setting of Execution Date

On July 31, 2020, BOP—at the direction of the Attorney General—scheduled Vialva's execution for September 24, 2020. ECF No. 673; *see* 28 C.F.R. § 26.3(a) (providing that, "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner than 60 days from the entry of the judgment of death"). On the same day, the Warden of USP Terre Haute (where Vialva is confined) delivered a letter to Vialva—and sent a copy to his attorney— providing "official notification" under 28 C.F.R. § 26.3(a) of the date "for the implementation of [Vialva's] death sentence." ECF No. 675, Exh. 1.

## LEGAL FRAMEWORK

"An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). In order to qualify for injunctive relief, a party "must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). In the capital context, a defendant who challenges the methods or procedures for carrying out a death sentence, but not the sentence itself, must show that use of existing methods or procedures rather than proffered alternatives will cause him irreparable injury; the mere existence of his death sentence is not enough. *See Hill v. McDonough*, 547 U.S. 573, 580-81 (2006); *Wood v. Collier*, 836 F.3d 534, 542 (5th Cir. 2016). In assessing the public interest and the potential harms of

5

enjoining an execution, a court must take into account "'the State's strong interest in enforcing its criminal judgments without undue interference'" from courts—particularly where a capital defendant brings a claim shortly before his sentence is due to be carried out. *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019) (per curiam) (quoting *Hill*, 547 U.S. at 584) (addressing similar standards for granting a stay of execution).

## ARGUMENTS

This Court should deny Vialva's attempt to enjoin BOP and the U.S. Marshals Service from carrying out his death sentence. None of Vialva's claims has merit, nor has he shown that the balance of equities favors precluding the government from carrying out his lawful sentence.

*First*, although this Court's judgment provided for a stay of Vialva's death sentence while he appealed, that stay expired long ago. If the stay does technically remain in effect, the Court should lift it now.

*Second*, the language in the judgment authorizing the Attorney General to set an execution date between 61 and 90 days from the date of the judgment was meant to provide Vialva time to appeal and to ensure that his sentence would be carried out expeditiously in the unlikely event he decided not to challenge it. Nothing in the judgment suggests that those time limits also constrain the Attorney General's exercise of his discretion to set Vialva's execution date *after* all avenues for appeal and post-conviction review are exhausted. And even if the judgment were construed in that manner, an injunction would be unnecessary because this Court could fix any problem by issuing its own order ratifying the execution date BOP has already set.

*Third*, contrary to Vialva's argument, no statute, regulation, or court decision supports the proposition that federal law requires the issuance of a warrant of execution to empower the U.S. Marshals Service to supervise the implementation of a death sentence. And even if Vialva's claim

had merit, this Court should resolve it by issuing an order confirming that the Marshals may proceed with the execution, not by enjoining the execution.

*Fourth*, BOP is not required to follow Texas's procedures related to setting an execution date, issuing a warrant, and notifying the prisoner. As three courts of appeals have held, federal law requires (at most) that BOP follow state law on the manner of effectuating death, such as the choice of execution method. Neither the FDPA nor the Department of Justice regulations that govern death sentences require BOP to comply with a State's pre-execution procedural requirements.

Vialva cannot satisfy his heavy burden of showing that he is entitled to an injunction preventing his execution. His motion should be denied.

## I.    No Stay of Execution is Presently in Effect.

This Court's June 16, 2000 judgment stated that, "[i]f an appeal is taken from [Vialva's] conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals." ECF No. 289 at 2. The Fifth Circuit issued its mandate on October 23, 2002, affirming Vialva's convictions and death sentence. ECF No. 342. Vialva nonetheless argues that, because this Court never issued a "further order" expressly lifting the stay after the court of appeals issued its mandate, the judgment remains "currently stayed by its own terms" and the government is precluded from carrying out his execution. Motion at 3. That argument lacks merit.

First, Vialva's judgment also states that, "[u]pon exhaustion of appeals, the sentence of DEATH will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas." ECF No. 289 at 2. That language clearly

directs BOP and the Marshals to carry out Vialva's execution once his appeals are exhausted. The Court's additional reference to a "stay[] pending further order of this Court," when read in that context, should not be interpreted to require an express order lifting the stay once the events that justified the stay have passed.

Second, since the court of appeals issued its mandate, this Court has issued several orders that are incompatible with the continuation of a stay, including (1) the denial of Vialva's § 2255 motion, ECF No. 449; (2) the denial of Vialva's motion to reconsider and amend that judgment, ECF No. 473; (3) the dismissal of Vialva's motion for relief under Rule 60(b)(6), ECF No. 570; and (4) the denial of COAs to review those orders. A defendant is not entitled to a stay of execution "as a matter of right," *Murphy*, 919 F.3d at 915 (quotation marks omitted), and must instead justify a stay by, *inter alia*, "ma[king] a strong showing that he is likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see Murphy*, 919 F.3d at 915. This Court's orders rejecting all of Vialva's challenges to his convictions and death sentence after the court of appeals issued its mandate affirming the Court's judgment on direct appeal demonstrate beyond any doubt that this Court did not consider the requirements for a continuing stay to be satisfied.

Even if a stay technically remains in effect 20 years after the judgment, however, it would not warrant the extraordinary relief of enjoining Vialva's execution. As explained, Vialva long ago completed the appeal contemplated in the judgment, and this Court and the Fifth Circuit have repeatedly determined that Vialva's further challenges to his convictions and sentence lack merit. He is therefore no longer entitled to a stay. Accordingly, if this Court determines that a stay is still in effect, the government requests that it be lifted.

8

**II.    The Court's Statement Authorizing the Attorney General to Set an Execution Date 61 to 90 Days After the Date of the Judgment Does Not Preclude the Attorney General from Scheduling Vialva's Execution for September 24, 2020.**

This Court's judgment provides that "[t]he time, place and manner of execution are to be determined by the Attorney General provided the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment." ECF No. 289, at 2. Vialva maintains that, because "it is well past 90 days from June 16, 2000, this delegation of authority to the Attorney General in the judgment is long expired," and that the judgment therefore provides no authority for the Attorney General or BOP to set his execution date.  Motion at 3.

That argument lacks merit. The 61-to-90-day provision is an artifact from model sentencing language used under 21 U.S.C. § 848, which was repealed in 2006. *See* Admin. Office of U.S. Courts, *The Presentence Investigation Report (Publication 107)*, Appx. F at 12 (revised Mar. 2006), available at https://www.scribd.com/document/67389653/Publication-107; 7A Fed. Proc. Forms § 20:978. As the commentary to the model language explains, "[t]he 61-day delay [was] intended to allow for an appeal to be filed," whereas "[t]he 90-day maximum period [was] suggested to provide a reasonable period within which the sentence can be carried out." *Publication 107*, Appx. F at 12 n.23. It would not be possible to "carr[y] out" the sentence within 90 days if the defendant appealed, however, and thus the model language provided for a stay of the "execution of the judgment" "[i]f an appeal is taken from the conviction and sentence." *Id.* at 12. As explained, the same stay language appears in Vialva's judgment, directly after the 61-to-90-day provision. ECF No. 289 at 2.  The judgment further provides that BOP should retain custody of Vialva "until exhaustion of the procedures for appeal of the judgment of conviction and review of the sentences," and that "[u]pon exhaustion of appeals, the sentence of DEATH will be implemented" by BOP and the Marshals. *Id.*

When read in context, therefore, the 61-to-90-day provision in Vialva's judgment addresses only the Attorney General's authority to set an execution date *before* an appeal is filed: the 61-day threshold provided sufficient time for Vialva to appeal, while the 90-day limit ensured that his sentence would be carried out expeditiously in the unlikely event Vialva decided not to challenge it. But there is no indication that those limits were meant to apply *after* Vialva appealed. Rather, as the judgment recognizes, an appeal would freeze Vialva's death sentence, and BOP's authority to schedule and proceed with the execution would thereafter be constrained by the statutory requirement of "exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," 18 U.S.C. § 3596(a), not by Court-imposed time limits linked to the date of the judgment. That interpretation comports with the Executive Branch's longstanding authority to set dates of execution pursuant to its constitutional obligation to "take care that the Laws be faithfully executed." U.S. Const. art. II. § 3; *cf. United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996) (concluding that "absent directly preempting congressional action, the Attorney General had constitutional and statutory authority to provide by regulation the means for executing death sentences" imposed under former 21 U.S.C. § 848). It also makes sense. Indeed, the illogic of Vialva's position—under which the Attorney General would be forced to set an execution date within 90 days of the judgment even if an appeal made it impossible to carry out an execution on that date, or else forever forfeit his ability to set an execution date at all—strongly suggests that it is not what the Court intended.

But even if this Court believed that the judgment inflexibly precludes the Attorney General from scheduling Vialva's execution more than 90 days after the date of judgment, it would not warrant an injunction. By its terms, the 61-to-90-day provision applies only to the Attorney General. ECF No. 289 at 2. Although the Executive Branch's authority to implement a court's

10

judgment imposing the death penalty by setting the execution date is not dependent on a separate authorization by the Judiciary, nothing would prevent this Court from issuing an order ratifying the date BOP has already selected. Vialva argues that the Court has the power to set an execution date, Motion at 6-8, and thus cannot complain if this Court were to adopt the existing date. Such an order, although not necessary, would also be consistent with historical practice. *See, e.g.*, *Holden v. Minnesota*, 137 U.S. 483, 495-96 (1890) (holding that Constitution permits either the executive or judiciary to set a date of execution). Accordingly, if this Court were to conclude that Vialva's claim has merit, it could remedy the situation by ratifying BOP's decision to schedule his execution for September 24, 2020, rather than enjoining it. *See, e.g. United States v. Lee*, 2020 WL 3921174, at *5 (E.D. Ark. July 10, 2020) (entering similar order "confirm[ing] . . . that DOJ had and has the authority to implement Mr. Lee's death sentence on July 13, 2020").

### III.    Federal Law Does Not Require A Formal Warrant Directing the U.S. Marshal to Supervise an Execution.

Vialva contends that that the U.S. Marshals Service cannot lawfully supervise his execution because this Court has never issued "a warrant to empower and direct" the Marshals to do so. Motion at 4. No such warrant is required. The statutes and regulations governing the conduct of federal executions themselves direct the Marshals to supervise executions. *See, e.g.*, 18 U.S.C. § 3596(a) ("[W]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence."); 28 C.F.R. § 26.3(a)(4) (directing that a death sentence shall be executed "[b]y a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal"). Vialva identifies no statute, regulation, or

judicial decision that would require a court to issue an additional order authorizing the Marshals to perform the functions already assigned to them by law.

Vialva's contrary argument principally relies on an 1818 opinion of the Attorney General, which addressed the question of whether President Monroe could issue a warrant "fix[ing] the day for the execution" in a case involving "mail-robbers" tried in Maryland. 1 Op. Atty. Gen. 228 (1818). The Attorney General observed that there was "no uniform rule to guide the conduct of the President in this respect," which "can be prescribed by Congress only." *Id.* The Attorney General further observed that, although federal courts had generally followed "the practice of the State courts in which they hold their sessions" in deciding whether to set an execution date by court order, "there is no law—that is, no positive act of Congress—which gives to the courts of the United States the express power of fixing the day." *Id.* In the absence of any congressional action, the Attorney General determined that the President had inherent power to issue warrants setting the date of an execution "in all cases where they are made necessary by the practice of the State in which the sentence is passed." *Id.*

Setting aside whether current federal law requires compliance with state warrant procedures (which is addressed in the next section), nothing in the Attorney General's opinion suggests that the Marshals may not proceed with an execution unless a court specifically orders them to do so. The opinion addresses whether the President may issue a "warrant" setting an execution date, not whether any additional "warrant" is necessary to authorize the U.S. Marshals to carry out a lawful death sentence. And the Attorney General concluded that, in the absence of congressional action to the contrary, it was the President—not the courts—that should issue a "warrant" setting the date. As Vialva recognizes, even two hundred years later, "Congress has remained silent on this specific question." Motion at 6. Accordingly, even if a warrant were

12

necessary in addition to the governing statutory and regulatory provisions, BOP's determination (as directed by the Attorney General) that Vialva should be executed on September 24, 2020—memorialized in a formal letter served on Vialva and his counsel, ECF No. 675, Exh. 1—would satisfy that requirement. *See* 28 U.S.C. § 566(c) (authorizing Marshals to "execute all lawful writs, process, and orders issued under the authority of the United States"); *see also United States v. Mitchell*, --- F.3d ---, 2020 WL 4815961, at *2 (9th Cir. Aug. 19, 2020) (observing that warden's letter to federal prisoner informing him of execution date functions as an "Execution Warrant" that provides "'official notification'" of the government's intent to carry out his death sentence).

Equally unavailing is Vialva's reliance on language from 28 C.F.R. § 26.2(b), which requires the government to append to its proposed judgment and order a "Return by which the designated United States Marshal may inform the court that the sentence of death has been executed." That regulation allows (but does not require) the Marshal to inform the sentencing court that its judgment had been carried out *after* the execution. It does not indicate that the issuance of a judicial warrant is a condition precedent to the implementation of the death sentence.

In any event, this Court *has* directed the Marshals to supervise the execution.  As explained, Vialva's judgment specifically states that, "[u]pon exhaustion of appeals, the sentence of DEATH will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, *who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas*." ECF No. 289 at 2 (emphasis added); *cf.* 28 U.S.C. § 566(a) (requiring Marshals to "obey, execute, and enforce all orders of the United States District Courts"). To the extent this Court believes that further judicial authorization is necessary, it could simply issue an order confirming that the Marshals are indeed permitted to do

13

what the governing judgment, statute, and regulation already require them to do. The Court should not, however, enjoin the execution.

## IV.    Federal Law Does Not Require BOP To Comply With Texas's Pre-Execution Procedures.

Finally, Vialva claims he is entitled to an injunction because the FDPA requires that the "implementation of [a death] sentence" be "in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a), and BOP's pre-execution procedures do not track Texas's pre-execution procedures. Specifically, Vialva focuses on Texas's requirements that a court set the execution date at least 91 days in advance, Tex. Code Crim. P. art. 43.141(a), (c); that, within ten days of issuing the order setting the date of execution, the court also "issue a warrant under the seal of the court for the execution of the sentence of death" that includes information about the offense and "command[s] the director [of the relevant prison] to proceed" with the execution, *id.* art. 43.15(a); and that copies of the warrant and the execution-date order be served on defense counsel, *id.* art. 43.141(b-1) & 43.15(b). Vialva's claim lacks merit for two independent reasons.

First, the government's longstanding reading of the FDPA is that § 3596(a)'s directive to implement a federal death sentence in the "manner prescribed by" state law requires only that BOP follow the State's "top-line choice among execution methods, such as the choice to use lethal injection instead of hanging or electrocution," not additional procedural details of the kind Vialva invokes. *In re Federal BOP Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020) (per curiam), *cert. denied*, 2020 WL 3492763 (S. Ct. June 29, 2020); *see, e.g.*, Gov't Br. in Opp. at 14-24, *Bourgeois v. Barr*, No. 19-1348 (U.S. June 19, 2020). That interpretation of the FDPA is articulated persuasively by Judge Katsas in his concurring opinion in the D.C. Circuit's recent FDPA litigation, *see Protocol Cases*, 955 F.3d at 114-21, and was strongly suggested by the three

Supreme Court Justices who addressed the issue in an earlier phase of that litigation, *see Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.).

The government's interpretation of § 3596(a) is consistent with the history of federal death penalty statutes. Section 3596(a)'s "manner" requirement is derived from the original federal execution statute—the Crimes Act of 1790—which for more than 140 years unambiguously used "manner" to refer to a general method of execution ("hanging"). *See Protocol Cases*, 955 F.3d at 115 (Katsas, J., concurring); *see also Roane*, 140 S. Ct. at 353 (statement of Alito, J.) (analyzing "the use of the term 'manner' in prior federal death penalty statutes"). In 1937, Congress amended the statute, replacing "hanging" with "the manner prescribed by the laws of the State within which the sentence is imposed." Pub. L. No. 75-156, 50 Stat. 304. As the Supreme Court has explained, "if a word is obviously transplanted from another legal source," it presumably "brings the old soil with it." *Hall v. Hall,* 138 S. Ct. 1118, 1128 (2018) (citation omitted). That is what the 1937 Act did, retaining the meaning of "manner" in the federal execution context as a reference to "the local mode of execution"—*e.g.*, "death by hanging," electrocution, or lethal injection. *Andres v. United States*, 333 U.S. 740, 745 n.6 (1948).

In 1994, Congress "carried forward the relevant language and" substance of the 1937 Act in the FDPA. *Protocol Cases*, 955 F.3d at 117 (Katsas, J., concurring); *accord id.* at 148 (Tatel, J., dissenting) ("By using virtually identical language in FDPA section 3596(a), Congress signaled its intent to continue the same system" as the 1937 Act). The FDPA therefore requires what the 1937 Act required: compliance with "the local mode of execution," such as lethal injection, but not all procedural details of state law. *Andres*, 333 U.S. at 745 & n.6. Because BOP conducts federal executions using lethal injection, 28 C.F.R. § 26.3(a)(4)—the same top-line method of

15

execution as Texas, *see Wood*, 836 F.3d at 536—the federal government has fully complied with the FDPA provision that Vialva invokes, and it need not follow additional state procedures.

Second, even if the Court were not inclined to resolve that issue, Vialva's claim would still fail because—as every court of appeals to have interpreted the FDPA has held—"Section 3596(a) cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure." *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020), *stay denied*, 2020 WL 3964236 (S. Ct. July 14, 2020); *see Mitchell*, 2020 WL 4815961, at *2-*3 & n.6; *Protocol Cases*, 955 F.3d at 112; *see also Roane*, 140 S. Ct. at 353 (statement of Alito, J.). Instead, those courts have held that the "manner" of "implementation" of a death sentence under § 3596(a) "addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death," such as "choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Mitchell*, 2020 WL 4815961, at *2. Pre-execution procedures, including state statutes governing "notice of an execution date," "fall outside the scope of 18 U.S.C. § 3596(a) because they are not pertinent to effectuating death." *Id.* at *3 n.6; *see Peterson*, 965 F.3d at 554 (holding that § 3596(a) addresses "how the sentence is carried out," not procedures that govern other aspects of the execution process such as the number and identity of witnesses). Even Judge Tatel, who would have held in favor of the inmates on some aspects of their FDPA claim in the D.C. Circuit litigation, agreed that § 3596(a) requires the federal government to follow only "those procedures that effectuate the death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Protocol Cases*, 955 F.3d at 151 (Tatel, J., dissenting). There is no reason for this Court to depart from that sound judicial consensus.

Not only would Vialva's contrary approach be a poor fit with the statutory text and widespread precedent, it would threaten to undermine the basic purpose of the FDPA by making

it "impossible to carry out executions of prisoners sentenced in some States." *Roane*, 140 S. Ct. at 353 (statement of Alito, J.). Adherence to Texas's warrant requirement, for example, would require BOP to obtain "a warrant under the seal of" a Texas state "court for the execution of the sentence of death," Tex. Code Crim. P. art. 43.15(a), but it is unclear how Texas courts would have authority to issue such a warrant given that the state judicial system plays no role in a federal prosecution for a federal crime. Requiring federal authorities to comply with such procedural requirements could also, in some states, enable local obstruction of federal sentences. It is implausible that Congress meant to impose such obstacles, including potentially insurmountable obstacles, on the implementation of federal death sentences. Indeed, Vialva does not identify any federal execution that has been constrained in the way he suggests, including the three federal executions that occurred in July 2020 after the Supreme Court denied a petition for certiorari and stay application from inmates pressing an FDPA claim that is even less sweeping than the one Vialva asserts here. *See Bourgeois v. Barr*, 2020 WL 3492763 (S. Ct. June 29, 2020).

Accordingly, the fact that BOP's procedures do not precisely track Texas's law governing the pre-execution procedures for setting an execution date, issuing an execution warrant, and serving those documents on counsel does not mean that BOP has failed to "implement[]" Vialva's sentence "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Vialva therefore is not entitled to injunctive relief.

## V.    The Balance of Harms Weighs Against Entry of an Injunction.

Finally, the balance of the equities weighs against issuing an injunction. In addition to Vialva's failure to establish success on the merits, he cannot demonstrate irreparable injury, that the balance of harms favors him, or that an injunction would comport with the public interest.

As explained, many of Vialva's complaints, even if meritorious, could be easily remedied by this Court without the need for an injunction. Vialva also has not identified any cognizable harm that would result from following BOP's procedures rather than Texas's. He does not dispute that the top-line manner of execution is the same under federal and state law. *See Barr v. Lee*, --- S. Ct. ---, 2020 WL 3964985, at *1 (July 14, 2020) (explaining that federal execution protocol involves lethal injection using a single dose of pentobarbital); *Wood*, 836 F.3d at 536 (same in Texas). And he has already received most of the pre-execution procedures he says he wants: the government selected an execution date well in advance and served the equivalent of an execution warrant on Vialva and his counsel, and he identifies no reason why having a Texas court (or this Court) do those things would have made a difference.

The government also has an overwhelming interest in the timely enforcement of criminal sentences imposed by unanimous federal juries after fair trials that have been upheld through extensive appellate and post-conviction proceedings in federal courts. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019). Once post-conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Unduly delaying executions can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The Government's interest in implementing Vialva's sentence is magnified by the "heinous" nature of his crimes. ECF No. 449 at 18. Vialva was the ringleader of the brutal murders of Todd and Stacie Bagley. After kidnapping them, robbing them, and driving around with them

locked in their own trunk for several hours as they pleaded for their lives, Vialva shot them both, killing Todd and then burning Stacie alive. His death sentence has been upheld throughout his many years of direct and post-conviction review. The balance of equities therefore tips strongly in the government's favor.

**CONCLUSION**

For these reasons, the Court should deny Vialva's motion to enjoin.

Respectfully submitted,

JOHN F. BASH
United States Attorney

/s/ Mark Stelmach

By:   MARK STELMACH
      Assistant United States Attorney
      903 San Jacinto, Suite 334
      Austin, TX  78701
      (512) 916-5858

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of August, 2020, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

Susan N. Otto
Federal Public Defender

/s/ Mark Stelmach

By:   MARK STELMACH
      Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | **CAPITAL CASE** |
| v. | § | NO. W-99-CR-00070(1) |
| | § | Execution Date: Sept. 24, 2020 |
| CHRISTOPHER ANDRE VIALVA. | § | |

## ORDER

The Motion of Defendant Christopher Andre Vialva, requesting this Court enter an

order enjoining the Federal Bureau of Prisons and United States Marshals Service from

conducting his execution, is DENIED.

It is so ordered this _____ day of August, 2020.

_____
HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CAPITAL CASE** |
| **v.** | § | **NO. W-99-CR-00070(1)** |
| | § | **Execution Date: Sept. 24, 2020** |
| **CHRISTOPHER ANDRÉ VIALVA** | § | |

**REPLY TO UNITED STATES'S RESPONSE IN OPPOSITION
TO MOTION TO ENJOIN THE FEDERAL BUREAU OF PRISONS
AND THE UNITED STATES MARSHALS SERVICE FROM
EXECUTING DEFENDANT WITHOUT LEGAL AUTHORITY
AND IN VIOLATION OF FEDERAL AND TEXAS LAW**

**TO THE HONORABLE COURT:**

Christopher André Vialva has requested this Court enjoin the Federal Bureau of Prisons and the United States Marshals Service from conducting his execution September 24, 2020. The controlling order of this Court is the Judgment entered June 16, 2000. The Attorney General has scheduled Mr. Vialva's execution for September 24, 2020, in derogation of the express terms of the Judgment and in violation of the Federal Death Penalty Act (FDPA), 18 U.S.C. §3596. Issues related to the execution procedures adopted by the United States and to the Constitutional adequacy of the post conviction review process are being litigated in other appropriate forums.[1] The sole issue presented to this Court concerns the legality of the September 24, 2020 execution date.

---

[1]Mr. Vialva filed a challenge to the Constitutionality of the federal death penalty protocol before receiving the Warden's letter. *See Vialva v. Barr, et al.*, D.D.C. Case No. 1:20-cv-01693-TSC, *Complaint*, Doc. 1 (06/22/2020), consolidated with *In Re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, D.D.C. Case No. 1:19-mc-00145-TSC, *Order,* Doc. 14 (08/12/2020); *and see Vialva v. Warden, et al.,* S.D. Ind. Case No. 20-CV-00413, filed 08/10/2020, Doc. 1 (*Petition for Writ of Habeas Corpus Pursuant 28 U.S.C. § 2241).*

The United States's argument in opposition to Christopher Vialva's request for injunctive relief is preceded by a section labeled "Background." *Response in Opposition to Motion to Enjoin* (Response), filed 08/25/2020, Doc. 680 at 1-5. The summary extends beyond a chronology and contains the United States's interpretation of the record. To the extent the United States is suggesting Mr. Vialva received a fair trial or a full and fair review of his claims, the record of the post conviction proceedings refutes such a conclusion.[2] It is correct that the notice of the Attorney General's decision to execute Mr. Vialva was provided by a letter from the Warden. *Response* at 5, § IV. The United States has failed to demonstrate either the letter served on Mr. Vialva or the notice it filed with this Court complies with the Federal Death Penalty Act, Texas law, or the plain language of the Judgment entered by Judge Smith. The United States also failed to provide a legal basis excusing its failure to comply with the law and the Court's Judgment.

## I.   The Stay of Execution Contained in the Judgment Is Presently in Place.

The United States devotes the majority of its response in opposition attempting to create an ambiguity and contending the ambiguity supports its actions. A plain reading of the Judgment reveals no ambiguity exists and the United States is bound by the Federal Death Penalty Act, 18 U.S.C. § 3596, to comply with the laws of Texas.[3] Notably, the United States has never sought clarification, correction, or modification of the Judgment.

---

[2]*E.g., Motion for Relief from Judgment Pursuant Rule 60(b)(6), Federal Rules of Civil Procedure,* filed 10/13/2017, Doc. 553; *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 and Brief in Support*, filed 06/14/2004, Doc. 372; *Volume I, Appendix of Exhibits*, filed 06/14/2004, Doc. 373; *Volume II, Appendix of Exhibits*, filed 06/14/2004, Doc. 374.

[3]*Judgment in a Criminal Case,* filed 06/16/2000, Doc. 289, *appended as Exhibit 1.*

Imposing the sentence of death for Counts 1, 3, and 4, Judge Smith directed that the United States Marshals will take custody of Mr. Vialva "upon the exhaustion of appeals" and will supervise his execution "in the manner prescribed by the laws of Texas." The second paragraph of Judge Smith's direction provided two contingencies. First, the Attorney General was authorized to set the "time, place, and manner" of the execution no less than 61 and no more than 90 days after June 16, 2000. Second, "[i]f an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending futher (sic) order of this Court upon receipt of the mandate of the Court of Appeals." Mr. Vialva's timely direct appeal and timely pursuit of post conviction relief activated the latter provision of the Judgment. The execution of the sentence of death is stayed by operation of the Judgment. No subsequent Order of Court has been sought by the United States or entered *sua sponte* by the Court. The stay remains in place.

## II.    The Attorney General, the Bureau of Prisons, and the Marshal Are Not Authorized to Execute Mr. Vialva in the Absence of Court Order or in Derogation of Controlling Law and Regulation.

The United States claims "longstanding authority" vests the Executive Branch with the power to control executions independent from the Judiciary, citing the general powers clause of Article II and *United States v. Tipton*, 90 F.3d 861, 902-03 (4th Cir. 1996).[4] *Tipton* did not address the question presented in this case. *Tipton* recognized the Attorney General's authority to implement regulations governing the  mechanics of how executions would occur once they are ordered, but not whether an execution would be conducted. *Id.,* 90 F.3d at 902–03. The regulations  considered in *Tipton* require the United States to submit a proposed Judgment and Order stating, "in addition to any other matters required by law," specific circumstances regarding the execution including notice that the execution

---

[4]*Response*, Doc. 680 at 10-11.

will be conducted "on a date and at a place" designated by the Director of the Bureau of Prisons. *See* 28 C.F.R. § 26.2(a)(1)-(4). Requiring the attorney for the government to submit a proposed Order and Judgment to a Court of competent jurisdiction ensures "implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a).

The Attorney General, acting entirely without the sanction of this Court, set an execution date 55 days from the date of the letter served on Mr. Vialva. The United States does not dispute the fact Texas law provides an execution date will be set no fewer than 91 days from the court order.[5] The actions of the Attorney General were contrary to federal law and the Department's own regulations. *Tipton* provides no support for the United States's position.

Faced with this obviously insupportable result, the United States urges this Court to "ratify" the current execution date, citing *United States v. Lee,* E.D. Ark. Case No. 4:97-cr-00243-LPR-2, 2020 WL 3921174 (July 10, 2020). The United States contends Mr. Vialva "cannot complain" if the Court "were to adopt the existing date" purportedly selected by the BOP.[6] The Arkansas district court's order in *Lee* is factually and legally distinguishable from the issue presented by Mr. Vialva.

Mr. Lee was challenging the validity of the notice he was provided June 15, 2020 advising him the Attorney General set a July 13, 2020 execution date. *Lee,* 2020 WL 3921174 at *5. However, Mr. Lee had failed to object to a similar notice provided July 25, 2019 advising him of a December 9, 2019 execution date. *Id.* at *2. There was no explanation for Mr. Lee's failure to raise the claim in the subsequent litigation that stayed the December 2019 execution, a fact cited by the

---

[5]In fact, Texas courts often set dates well in excess of 90 days from the execution order. The most recent order set a March 4, 2021 execution date. *See* Death Warrant, *State v. Ibarra*, No. 1996-634-C (54th Dist. Ct. Aug. 12, 2020).

[6]*Response*, Doc. 680 at 11.

4

district court as significant. Moreover, Mr. Lee apparently did not raise a claim regarding the notice's failure to comply with Arkansas law. *Lee* is instructive in its distinction from Mr. Vialva's case.

### III.    Federal Law Requires an Order or Warrant Directing the United States Marshal to Supervise an Execution.

The United States conflates the responsibility of the United States Marshals Service to supervise the execution of an inmate with the authority to order an execution. From this faulty premise, the United States proceeds to misconstrue the legal significance of Attorney General Wirt's opinion and its relevance to this case.[7]

The significance of Attorney General Wirt's opinion is that it stands as an early construction of federal death penalty procedure that remains unmodified by a subsequent controlling Act of Congress. The opinion unambiguously establishes state law as prescribing the mechanism through which an execution warrant is issued. *See Death-Warrants,* 1 U.S. Op. Atty. Gen. 228, 1818 WL 440 ("[T]he courts of the United States have adopted, in this particular, the practice of the State courts in which they hold their sessions, and these are various: death-warrants from the governor being required in several of the States; and in others the courts fixing the day."), *appended as Exhibit 2.* Contrary to the United States's argument, there is no "inherent" power vested in the President to issue an execution warrant. The President's power to issue warrants derives from the judicially constructed rule of law directing that the law of the State governs execution warrant requirements. *Id.*. The purpose of General Wirt's emergency request to the Secretary of State was to alert the President to the necessity of issuing a death warrant in conformity with the laws of Maryland.

---

[7]*Response*, Doc. 680 at 12-13.

Similarly, contrary to the United States's assertion, the Attorney General did not possess the independent authority to issue a death warrant because no law authorizes such action. No subsequent statute has vested the office of the Attorney General of the United States with the authority to act independently from the requirements of state law.

The FDPA unambiguously directs that the Attorney General will release the prisoner to the Marshal "who shall supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Any arguable ambiguity about the role of state law in the "implementation" of a federal death sentence is resolved in the next sentence of the statute. If the State in which the sentence is imposed does not provide death as a penalty, "the *court* shall designate another State, the law of which does provide for the implementation of the sentence of death." *Id.* (emphasis added). In this case, Texas law provides for implementation of a sentence of death on a warrant issued by a court of competent jurisdiction. Texas law provides a minimum period between the issuance of the death warrant and the execution of the condemned. Texas law does not provide either the issuance of the warrant or modification of the statutory provisions can be effected by a member of the Executive Branch. The Attorney General's direction to the Bureau of Prisons and the Warden setting Mr. Vialva's execution date 55 days from the only notice he has ever received was unauthorized by federal law and violates the warrant requirements of Texas law.[8]

---

[8]The letter delivered by Warden Watson did not indicate why the Attorney General set an execution date 55 days from the date of the notice. In addition to violating the law of Texas which secures Mr. Vialva a minimum of 91 days, the abbreviated schedule is significantly less than the 137 days initially afforded Daniel Lee and the 139 days initially afforded Lezmond Mitchell. *See Lee,* 2020 WL 3921174 at *1; *United States v. Mitchell*, __ F.3d __, 2020 WL 4815961 at *1 (9th Cir. Aug. 19, 2020).

**IV.    Federal Law Requires the Court to Implement the Sentence of Death in a Manner Comporting with Texas Law.**

The United States reconstructs Mr. Vialva's argument into a contention federal law does not require the BOP to comply with Texas law in setting execution dates.[9] Mr. Vialva is challenging the validity of the execution notice that was not issued by the Court in compliance with Texas law. We agree with the United States that the issue of how to implement a federal death "in the manner prescribed by State law" presents a challenging question of statutory construction, as exemplified in its cited case, *In re Federal BOP Execution Protocol Cases,* 955 F.3d 106 (D.C. Cir. 2020) (*per curiam*) ("*Protocol Cases*").[10] The United States's reliance on *Protocol Cases* to address Mr. Vialva's contention is misplaced.

Mr. Vialva is not challenging the method of execution the United States apparently intends to use through this motion. The instant motion challenges the legality of the letter served by the Warden in lieu of a warrant issued by this Court in conformity with Texas law. It does not raise issues regarding the detailed minutiae of the mechanics of the execution process devised by the United States. None of the opinions in *Protocol Cases* addresses the issue of whether the Attorney General has the authority to sidestep the State law requirements of an execution warrant. The opinion

---

[9]*Response*, Doc. 680 at 14.

[10]This is the most extensive opinion addressing the meaning of "manner" of implementing a death sentence and the extent to which the protocols of the State may govern an execution. The three Circuit Judges' distinct interpretations reflect a spectrum of construction. *See* 955 F.3d at 133-35 (Rao, C.J., concurring) (adhere to all state requirements expressed in statutes and regulations); *id*. at 146 (Tatel, C.J., dissenting) (adhere to all minutiae of execution procedures in state protocols); *op cit.* at 114 (Katsas, C.J., concurring) (adhere only to general manner of execution). Unquestionably, this is an issue that must be resolved by the Supreme Court. The "importance of clarifying the FDPA's meaning remains," in light of the "additional federal executions scheduled in the coming months." *Mitchell v. United States*, 591 U.S. __, 2020 WL 5016765 (Aug. 25, 2020) (Sotomayor, J.), *appended as Exhibit 3.*

7

of Chief Judge Rao and the dissent of Judge Tatel clearly support the necessity of conforming to a fundamental State law requirement. Judge Katsas's concern is allayed by the unambiguous State statute. *See* Tex. Code Crim. Proc. art. 43.141.

State law warrant requirements are vastly different from the detailed procedures involved in the mechanics of execution protocols. Warrant requirements are readily ascertainable laws enacted by state legislatures that federal courts have been applying for federal executions prior to 1818. Historically, Texas executes more than ten people every year. Its system for judicially implementing death sentences is not a mystery, nor is it difficult for a federal court to fashion an order in conformity with those requirements. In fact, Mr. Vialva has already spelled out the material requirements for a warrant that conforms to Texas law in his motion.[11]

The United States contends Mr. Vialva's request that his execution be carried out in conformity with federal law would undermine the FDPA because it would make executions impossible in some States. The United States leaps to this dubious conclusion by asserting it would be impossible for the BOP to obtain a warrant under the seal of a Texas court.[12] The BOP is neither required nor authorized to undertake such a task. The court that imposed the sentence is required to enter an order authorizing the implementation of the sentence of death in accordance with the law of the State in which it sits. As discussed, the FDPA provides the mechanism through which the court selects an alternative State's death penalty law if none exists where it is sitting. There is no danger of the chaos the United States is attempting to suggest. The United States simply needs to comply with the law that exists.

---

[11]*Motion to Enjoin*, filed 08/14/2020, Doc. 675 at 9-10.

[12]*Response*, Doc. 680 at 16-17.

**V.      There Are No Equities to Weigh.**

Finally, the United States argues the balance of harms weighs against enjoining the BOP's threatened actions.[13]  There are no equities to weigh.  The United States took eight years, from 2011 to 2019, to adopt a new execution protocol.  See *In re Matter of the Federal Bureau of Prisons' Execution Protocol Cases*, Case No. 1:19-mc-00145-TSC (D.D.C.), Dkt. 50 at 14.1  The United States has exhibited its current level of urgency to enforce death sentences only after announcing the new protocol and scheduling the recent spate of executions, including Mr. Vialva's.  The recency of this initiative undermines any notion that additional delay will cause significant harm to any legitimate federal interest. ""[N]o significant harm to the public interest could arise from the proper, informed, deliberate adjudication" of Mr. Vialva's claims.  *See Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004).

The United States is already subject to a court order not to execute Mr. Vialva.  No further order has issued by this Court directing the Marshal or any other agency of the Executive Branch to execute Christopher Vialva September 24, 2020, or on any other day.  Mr. Vialva seeks enforcement of the existing court order.  He requests that any future of this Court concerning his execution adhere to federal law by conforming to the warrant and other material requirements of Texas law governing executions.

**INJUNCTIVE RELIEF IS NECESSARY**

Mr. Vialva is not seeking any form of extraordinary relief through this Motion.  He is requesting the enforcement of an existing order of this Court that the United States has announced it intends to violate.  He is requesting that any order directing his execution conform to the Judgment

---

[13]*Response,* Doc. 680 at 17.

and Texas law, as required by the FDPA. This Court retains sole jurisdiction to enter such an order. No further relief is being sought through this motion.

Mr. Vialva has not delayed bringing this Motion, which was filed 14 days after he was served with the Warden's letter. He was not provided with any prior warning of the Attorney General's intention to select him for execution, nor has he acquiesced in the procedure adopted by the Attorney General. *Compare Mitchell*, 2020 WL 4815961 at *1. The United States does not dispute that the notice provided in the letter does not conform to the requirements of Texas law. The United States does not dispute that it failed to submit a proposed Order and Judgment to this Court as required by the Judgment and the regulations governing its conduct. There is no substantial debate regarding the likelihood of Mr. Vialva's success on the issue he has raised. The United States has failed to follow the law and its suggestion that the Court cure its failure by "ratifying" a notice that does not comply with the law is unavailing.

In light of the procedural posture of this case, an order enjoining the United States from proceeding with the September 24, 2020 execution is necessary to ensure conformity with federal law and the prior order of this Court.

Christopher Vialva, through counsel, requests this Court enter an order enjoining the Bureau of Prisons and the United States Marshals Service from executing Mr. Vialva until they have the legal authority to do so by further order of the Court. Mr. Vialva requests that any such further order comply with Texas law governing the setting of execution dates and issuance of execution warrants. If the Court is considering issuing a further order setting a date of execution for Mr. Vialva, counsel requests an opportunity to be heard before such an order is entered.

Respectfully submitted,

s/Susan M. Otto
SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN  Oklahoma Bar #32694
Assistant Federal Public Defender Capital Habeas Unit
Federal Public Defender Organization
        Western District of Oklahoma
215 Dean A. McGee Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Electronic mail: Susan_Otto@fd.org;
Michael_Lieberman@fd.org
COUNSEL FOR DEFENDANT
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
Counsel for Plaintiff

*Via electronic mail to*
Mark Stelmach
Assistant United States Attorney
Austin, Texas
Counsel for Plaintiff

Rob Owen
Law Office of Robert C. Owen, LLC
53 W. Jackson Blvd., Suite 1056
Chicago, IL 60604

John Carpenter
Assist. Federal Public Defender
1331 Broadway, Ste. 400
Tacoma, WA 98402
Counsel for Brandon Bernard

*s/Susan M. Otto*
SUSAN M. OTTO

11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL NO. W-99-CR-070(1)-ADA** |
| **v.** | § | |
| | § | **\*  CAPITAL CASE  \*** |
| **CHRISTOPHER ANDRE VIALVA** | § | |

### ORDER ON MOTION FOR INJUNCTIVE RELIEF

Defendant Christopher Vialva was convicted under federal law of capital murder and sentenced to death.  He is scheduled to be executed on September 24, 2020, at the Federal Correctional Complex in Terre Haute, Indiana, where he currently resides.  On August 14, 2020, Vialva filed a motion to enjoin the Federal Bureau of Prisons (BOP) and the United States Marshals Service (USMS) from executing him.  ECF No. 675.  Citing the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596, as well as the express terms of this Court's June 2000 judgment, Vialva contends that these agencies lack the legal authority to carry out his execution.  The Government filed a response (ECF No. 680) disputing Vialva's assertions, to which Vialva has replied (ECF No. 683).

After carefully considering the pleadings and the governing legal authorities, the Court concludes that Vialva's motion does not meet the standards for injunctive relief.  His motion (ECF No. 675) is therefore denied for the reasons discussed below.

### I.  Background

In June 1999, Vialva led fellow gang members in the kidnapping, robbery, and ultimately murder of two youth ministers, Todd Bagley and his wife Stacie, on their way home from what would become their last Sunday morning worship service.  The Bagleys stopped at a

convenience store when the young men chose them as the victims of their robbery scheme born the day before. After Vialva and his accomplices tricked the couple by asking for a ride to an uncle's house, Vialva pulled out a handgun and announced "the plans have changed." The gang stole their money, jewelry, and ATM cards, and then locked the Bagleys in the trunk of their own car while the gang drove around for hours attempting to withdraw money from the Bagleys' account and pawn Stacie's wedding ring.

Vialva insisted on killing the Bagleys and burning their car to eliminate evidence of the gang's crimes. While they poured lighter fluid inside the car, the Bagleys sang and prayed in the trunk. Stacie said, "Jesus loves you" and "Jesus, take care of us." Vialva then donned a ski mask, ordered the trunk open, and shot both Todd and Stacie in the head. Todd was instantly killed, but Stacie survived the gunshot long enough to burn alive after one accomplice, Brandon Bernard, set the car on fire.

In June 2000, Vialva and his co-defendant Brandon Bernard were jointly tried and convicted by a unanimous jury in the Western District of Texas who heard all of the evidence and decided their guilt for their part in the carjacking and murder of Todd and Stacie Bagley while on federal government property. Both were sentenced to death. Their convictions were affirmed on direct appeal and certiorari was denied by the United States Supreme Court. *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002), *cert. denied*, 539 U.S. 928 (2003). Vialva and Bernard then challenged their convictions and sentences by filing motions to vacate, set aside, or correct under 28 U.S.C. § 2255 alleging a myriad of constitutional violations. After careful consideration, the district court—the Honorable Judge Walter S. Smith, Jr. presiding[1]—denied an evidentiary hearing, denied the § 2255 motions and the claims raised therein, and denied a

---

[1]    Judge Smith also presided over Bernard and Vialva's original trial.

certificate of appealability (COA).  ECF No. 449.  On appeal, the Fifth Circuit also denied

Vialva and Bernard a COA and their petitions for certiorari review were again denied by the

Supreme Court in early 2016.  *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), *cert.*

*denied*, 136 S. Ct. 892 (2016).

Thereafter, Vialva and Bernard filed motions under Rule 60(b) of the Federal Rules of

Civil Procedure asking the district court to vacate its previous denial of their § 2255 motions.

ECF Nos. 553, 569.  In both motions, the defendants argued that Judge Smith's alleged

"unfitness" to preside over the § 2255 proceedings amounted to a defect in the integrity of the

post-conviction review process sufficient to justify reopening the proceedings.  The district

court—the Honorable Judge Lee Yeakel presiding—construed the Rule 60(b) motions as

successive petitions and dismissed them without prejudice for lack of jurisdiction.  ECF No. 570.

The Fifth Circuit denied COA on the issue and the Supreme Court denied certiorari in January

2020.  *United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 860 (2020).

On July 31, 2020, the BOP, upon the direction of the Attorney General, scheduled

Vialva's execution for September 24, 2020.  That same day, Vialva was informed of the setting

of his execution date, as was this Court.  ECF Nos. 675-1, 673. Two weeks later, Vialva filed the

instant motion to enjoin the BOP and USMS from carrying out his execution.  According to

Vialva, neither the June 2000 judgment (ECF No. 289), Department of Justice regulations, nor

any other federal law presently empowers the Attorney General, USMS, or BOP to unilaterally

set and carry out his execution.

Vialva provides four arguments to support this assertion: (1) this Court's June 2000

judgment stayed Vialva's execution "pending further order of this Court," and no further order

has been issued; (2) the June 2000 judgment does not authorize the Attorney General or BOP to

determine the time, place, and manner of his execution; (3) federal law requires the issuance of an execution warrant from the trial court before the USMS is authorized to supervise an execution, and no such order has been issued by this Court; and (4) the BOP lacks authority under federal law to execution him because they have not followed the procedures set forth by Texas law governing the implementation of death sentences.  Vialva asks this Court to enjoin the BOP from executing him "until it has the legal authority to do so and in a manner that comports with federal and Texas law."  ECF No. 675 at 11.

## II.  Analysis

To obtain a preliminary injunction, Vialva must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Ladd v. Livingston*, 777 F.3d 286, 288 (5th Cir. 2015) (citing *Trottie v. Livingston*, 766 F.3d 450, 451 (5th Cir. 2014)).   This standard is essentially the same as the framework for deciding whether to grant a stay of execution.  *See Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (reiterating the four perquisites for obtaining a stay of execution as set forth in *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

Notably, the party seeking injunctive relief must prove each of the four elements before a preliminary injunction can be granted.  *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).   Because a preliminary injunction is considered an "extraordinary and drastic remedy," however, it is not granted routinely, "but only when the movant, by a clear showing, carries the burden of persuasion."   *Holland Am. Ins. Co. v.*

*Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). Even when a movant establishes each of the four requirements, the decision whether to grant or deny a preliminary injunction is left to the sound discretion of the district court, and the decision to grant a preliminary injunction is treated as the exception rather than the rule. *Mississippi Power & Light*, 760 F.2d at 621.

As explained below, these factors do not support Vialva's request for an injunction. Vialva has failed to present a substantial case on the merits, and the interests of other parties, including the public, weigh in favor of denying Vialva's request to stay his execution.

## A.   **Vialva's Arguments Lack Merit.**

### 1.   The Court's June 2000 Judgment

Vialva first contends that the explicit terms of the Court's June 2000 judgment demonstrate that the BOP lacks the legal authority to execute him. In relevant part, the June 2000 judgment reads:

> […] As to [the capital counts], the defendant is hereby committed to the custody of the U.S. Bureau of Prisons until exhaustion of the procedures for appeal of the judgment of conviction and review of the sentences. Upon exhaustion of appeals, the sentence of DEATH will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas.

> The time, place and manner of execution are to be determined by the Attorney General, provided the time shall not be sooner than 61 days nor later than 90 days after the date of this judgment. If an appeal is taken from this conviction and sentence, execution of the sentence shall be stayed pending further order of this Court upon receipt of the mandate of the Court of Appeals.

> The defendant is hereby committed to the custody of the Bureau of Prisons and shall be confined until the sentence of execution is carried out.

ECF No. 289 at 2.

Citing the second paragraph of the judgment, Vialva argues there is presently a stay of execution in place because no further order ever issued from the district court. He also asserts

that the Attorney General completely lacks the authority to set an execution date now because more than 90 days have passed since the judgment issued. The Court does not agree with either of Vialva's arguments. When read in context with the entire judgment, it is clear the second paragraph was intended to limit only the Attorney General's authority to set an execution date before Vialva had a chance to exhaust his appeals. There is no indication that a stay of execution—or the limitations placed on the Attorney General's authority to set an execution date—was meant to apply after Vialva had exhausted his appeals. This is evidenced by the first paragraph of the judgment indicating that the Government *will* implement Vialva's sentence upon the exhaustion of his appeals.

Nevertheless, the Court is aware that the June 2000 judgment may cause the discerning reader some confusion. The remedy to this confusion, however, is not to enjoin the Government from carrying out Vialva's lawful sentence, but rather clarify what the Court believes was meant all along—that there is no longer a stay in place and the Government has the authority to set and carry out Vialva's sentence of death. To that end, simultaneous with the filing of this Order, the Court will issue a separate Order lifting any theoretical stay and confirming the Government's authority to schedule and carry out Vialva's execution on September 24, 2020.

2.     Federal Law

Vialva next alleges that federal law requires the issuance of a warrant from this Court before the USMS has authority to carry out his execution. Because no such warrant has been issued, Vialva argues, no one in the Executive Branch, including the Attorney General and USMS, has authority to implement his upcoming scheduled execution. He relies, in part, on a Department of Justice (DOJ) regulation instructing government attorneys on the type of proposed judgment and order they should file after a jury returns a verdict of death. *See* 28 C.F.R. § 26.2

Case: 20-70019    Document: 25    Page: 60    Date Filed: 09/15/2020

("Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order . . .").

There are at least two problems with Vialva's argument. First, there is nothing in the Constitution stating that the power to *implement* a sentence—as opposed to the power to *impose* a sentence—vests solely with the courts, and Vialva identifies no statute, case law, or regulation consistent with this position. Although Vialva refers to 28 C.F.R. § 26.2, his reliance on a regulation that governs only DOJ attorneys is misplaced. For one, the regulation does not indicate that the issuance of a judicial warrant is a prerequisite for obtaining authorization to implement a sentence.[2] And while incorporating the content of 28 C.F.R. § 26.2 may seem like a good idea, courts are not required to comply with the regulation in order to confer DOJ the authority to implement a lawfully imposed death sentence.

This leads to Vialva's second problem—he concedes that a district court *can* confer DOJ this authority. The Court did just that in the June 2000 judgment when it sentenced Vialva to death. In that judgment, the Court specifically stated that Vialva's sentence "will be implemented by the defendant being released from the custody of the U.S. Bureau of Prisons to the custody of the United States Marshals, who shall supervise the execution of the defendant in the manner prescribed by the laws of Texas." ECF No. 289 at 2. This is consistent with the FDPA, which directs the USMS to "supervise the implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." Thus, the Court long ago gave DOJ the authority to implement Vialva's sentence.

---

[2] The regulation states that the proposed Judgment and Order filed by the government shall state (1) the sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service; (2) the sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;   (3) the sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons; and (4) the prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence. 28 C.F.R. § 26.2(a).

Regardless, assuming further judicial authorization is necessary, this Court's new Order—issued contemporaneously with this one—tracks the language of 28 C.F.R. § 26.2 and confirms DOJ's authority to implement Vialva's sentence.   Injunctive relief is therefore unnecessary.

    3.      Texas Law

Lastly, Vialva contends he is entitled to an injunction because his sentence is not being implemented "in the manner prescribed by the laws of Texas" as required by the FDPA and the June 2000 judgment.  Vialva focuses on three pre-execution procedures that are required under Texas law but allegedly have not been followed in this case:  (1) that a court must enter an order setting the date of an execution in order to effectuate a death sentence; (2) that the execution date must be set at least 91 days in advance; and (3) that a court issue an execution warrant directing the relevant authority to carry out the execution, a copy of which must be served on counsel.  *See* Tex. Code Crim. Pro. art. 43.141(a)-(c).  Because none of these requirements have occurred, Vialva argues that carrying out his execution would be "blatantly illegal."  The Court disagrees.

While the specific issue raised by Vialva is admittedly novel, every court to deal with a similar issue has come to the same conclusion—that the FDPA "cannot be reasonably read to incorporate every aspect of the forum state's law regarding execution procedure." *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020) (finding state law governing execution witnesses falls outside the scope of the FDPA); *United States v. Mitchell*, No. 20-99009, 2020 WL 4815961, at *2 (9th Cir. 2020) (finding procedures that do not effectuate death fall outside the scope of the FDPA); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (*Protocol Cases*) (same).  Rather, federal law requires the Government to follow only

those state laws, regulations, and protocols that govern the procedure for "effectuating death." *Mitchell*, 2020 WL 4815961, at *2.

This Court agrees with the above Circuits and concludes that, even under a broad reading, the FDPA incorporates only those state procedures "that effectuate [] death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." *Peterson*, 965 F.3d at 554; *Protocol Cases*, 955 F.3d at 151 (Tatel, J., dissenting). The pre-execution procedures of Texas mentioned by Vialva are not pertinent to effectuating death and therefore do not fall under the scope of the FDPA. Consequently, Vialva fails to establish the substantial likelihood of success on the merits necessary to warrant injunctive relief. *Jones*, 880 F.3d 756, 759.

**B.    The Remaining Factors Weigh Against an Injunction.**

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. National Resource Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). In addition to evaluating a movant's likelihood of success on the merits, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. (citation omitted). Courts should also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. In this case, Vialva fails to show that the balance of equities—*i.e.* the remaining three prerequisites for obtaining an injunction—weigh in his favor.

To start, Vialva has not identified what "irreparable injury" would occur if an injunction is not issued. The gist of Vialva's motion is that the Government set his execution date without further order from this Court and without complying with Texas law. As explained at the zoom hearing held September 3, 2020, that means Vialva was given notice of his execution date only

55 days in advance as opposed to at least 90 days that is required under Texas law, thus cutting short his time to further challenge his conviction and sentence and request clemency. But while the death penalty itself is irreversible and sometimes "weighs heavily in the movant's favor," there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam).

As discussed in more detail in the Background section, Vialva has thoroughly litigated the legality of his conviction and sentence for almost two decades on direct appeal and in post-conviction proceedings before this Court, the Fifth Circuit, and the Supreme Court. It is safe to say the legal issues have been "sufficiently litigated." And while the legal issues surrounding Vialva's execution date did not become ripe until the date was set, any argument that he has been prevented from fully and fairly litigating these issues is belied by his numerous legal filings since that time and a merits decision this week on his habeas corpus petition.[3] Petitioner has also filed a clemency petition and had a hearing regarding that petition scheduled for September 10, 2020. Thus, this Court can find no cognizable harm that will result to Vialva if his request for an injunction is denied.

Furthermore, the interests of the Government—and the public—in enforcing valid criminal sentences outweigh Vialva's request for more time. "[E]quity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the

---

[3]    In addition to the exemplary briefing provided in the instant case, Vialva has also requested habeas corpus relief from the Southern District of Indiana and challenged the constitutionality of the federal death penalty protocol in the D.C. district court, the D.C. Circuit Court, and the Supreme Court. *See Vialva v. Warden, et al.*, No. 20-CV-00413 (S.D. Ind.), ECF No. 1 (Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 filed Aug. 10, 2020); *Vialva v. Barr, et al.*, No. 1:20-cv-01693-TSC (D.D.C.), consolidated with *In Re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-00145-TSC (D.D.C.); *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. 19-1348, 2020 WL 3492763 (U.S. June 29, 2020). The Southern District of Indiana has already ruled on the merits of Vialva's relief request. *See Vialva v. Warden*, No. 20-CV-00413 (S.D. Ind.), ECF No. 20 (Order Den. Petition for Writ of Habeas Corpus (Sept. 8, 2020)).

federal courts." *Crutsinger v. Davis*, 930 F.3d 705, 709 (5th Cir. 2019) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). The Supreme Court has frequently explained that "both the [Government] and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019); *Hill*, 547 U.S. at 584.

Granting Vialva an injunction would clearly inhibit the Government's vested interest in carrying out an otherwise valid sentence and would impair the finality of this Court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *Protocol Cases*, 955 F.3d at 126 (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)). Vialva committed the horrendous murders of Stacie and Todd Bagley over 21 years ago and has received the full panoply of procedural protections afforded under the Constitution and the FDPA. No further delay is warranted.

In short, Vialva fails to demonstrate "that the balance of equities tips in his favor, [or] that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Jones*, 880 F.3d at 759. The relief requested in his motion to enjoin his execution will therefore be denied.

### III.  Conclusion

Vialva has failed to demonstrate a likelihood of success on the merits or that the balance of equities weighs in his favor. Accordingly, for the foregoing reasons, Vialva's Motion for Injunction, filed August 14, 2020 (ECF No. 675), is **DENIED**.

It is so **ORDERED.**

SIGNED this 11th day of September, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL NO. W-99-CR-070(1)-ADA** |
| **v.** | § | |
| | § | **\* CAPITAL CASE \*** |
| **CHRISTOPHER ANDRE VIALVA** | § | |

**ORDER**

In June 2000, Defendant Christopher Vialva was convicted under federal law of capital murder and sentenced to death. The district court's Judgment dated June 16, 2000 (ECF No. 289) authorized the Department of Justice (DOJ)—including the Attorney General, the Federal Bureau of Prisons and the United States Marshals Service—to determine the time, place, and manner of Vialva's execution and to carry out that execution. As explained in the other Order filed today, this Court does not believe another order is required to empower DOJ with this authority, nor does the Court believe that a stay is presently in effect as a result of the original Judgment. Nevertheless, out of an abundance of caution, the Court issues this Order to lift any theoretical stay and confirm DOJ's authority to select Vialva's execution date and implement his sentence of death.

Accordingly, to the extent there is presently a stay of execution in place, this Court hereby **ORDERS** that the stay and abeyance is **LIFTED**.

Furthermore, in accordance with 28 C.F.R. § 26.2, the Court **ORDERS**:

(1)     The sentence of death, set forth in the Court's June 2000 Judgment (ECF No. 289), shall be executed by a United States Marshal designated by the Director of the United States Marshals Service;

(2)    The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death;

(3)    The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons, namely, **September 24, 2020**, at the Federal Correctional Complex, Terre Haute, Indiana, or such other time and place as he may later designate; and

(4)    The prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence.

Finally, nothing in this Order shall be deemed to prevent a court of competent jurisdiction from issuing a stay or injunction of the execution if that court deems such a stay to be necessary and appropriate.  Nor does this Order prevent the President of the United States from granting clemency to the defendant.

It is so **ORDERED**.

SIGNED this 11th day of September, 2020.


_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

2