# No. 20-70019

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee,

v.

**CHRISTOPHER ANDRÉ VIALVA**,

Defendant-Appellant.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

———————————

**APPELLEE'S RESPONSE IN OPPOSITION
TO MOTION FOR STAY OF EXECUTION**

The United States of America respectfully asks this Court to deny
Defendant Christopher André Vialva's motion to stay his execution. In
2000, Vialva was sentenced to death for his role in the abduction and
murders of Todd and Stacie Bagley. Since that time, Vialva has
relentlessly challenged his death sentence on direct appeal and collateral
review. Every court to have considered his challenges—including this
Court and the U.S. Supreme Court—has rejected them. Now, more than

two decades after he was convicted and less than nine days before his death sentence is due to be carried out, Vialva has filed a last-minute motion in this Court to stay his execution. As the district court recently explained in denying a similar motion for a preliminary injunction, Vialva cannot show a strong likelihood of success on the merits of his claims, prejudice, or that his interests outweigh the substantial public interest in carrying out his lawful sentence. (*See* ROA.3666–73.) Vialva's motion for a stay of execution should therefore be denied.

## BACKGROUND

### I.    The Murders of Todd and Stacie Bagley

In 1999, Vialva, Brandon Bernard, and three other members of a street gang in Killeen, Texas, carjacked and murdered Todd and Stacie Bagley. *United States v. Bernard*, 299 F.3d 467, 471–73 (5th Cir. 2002). After the Bagleys agreed to give the group a ride in their vehicle, Vialva pulled a handgun on Todd and stated that "the plans have changed." *Id.* at 472. Vialva and his accomplices then robbed the Bagleys, forced them into the trunk of their car, and drove around for several hours attempting to empty the Bagleys' bank accounts from multiple ATMs and pawn Stacie's wedding ring. *Id.*

Throughout the abduction, Vialva "insisted on killing the Bagleys and burning their car to eliminate the witnesses" and evidence. 299 F.3d at 472. Vialva, Bernard, and two other gang members ultimately drove the Bagleys' car (with the Bagleys still in the trunk) to a remote location on the Fort Hood military installation. *Id.* at 472–73. Bernard poured lighter fluid in the Bagleys' car, while the Bagleys sang and prayed in the trunk. *Id.* at 472. Vialva then ordered the trunk opened and shot the Bagleys. *Id.* at 472–73. Vialva shot Todd in the head at close range, killing him instantly, while his shot to the side of Stacie's face merely knocked her unconscious. *Id.* Bernard then set fire to the car, killing Stacie, who died of smoke inhalation. *Id.* at 473.

## II.    Trial, Appeal, and Postconviction Proceedings

Following a jury trial in the United States District Court for the Western District of Texas, Vialva was convicted on four counts: carjacking resulting in death, in violation of 18 U.S.C. § 2119; conspiracy to commit murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. §§ 1111 and 1117; and two counts of murder within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1111. *See* 299 F.3d at 474.

Following a capital sentencing hearing, the jury unanimously recommended that Vialva be sentenced to death on the carjacking and murder counts. *Id.* The district court imposed that sentence pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3591 *et seq. See* 299 F.3d at 474.

This Court affirmed the district court's judgment on direct appeal. 299 F.3d at 489. The Court subsequently denied rehearing *en banc* and issued its mandate on October 23, 2002. (*See* ROA.906.) The Supreme Court denied certiorari. 539 U.S. 928 (2003).

In 2004, Vialva filed a motion to vacate his death sentence under 28 U.S.C. § 2255. (ROA.974–1186.) The district court denied Vialva's § 2255 motion and denied his request for a certificate of appealability (COA). (ROA.2644–2706.) This Court likewise denied a COA, *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014), and the Supreme Court denied certiorari, 136 S. Ct. 1155 (2016).

In 2017, Vialva filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking relief from the district court's judgment denying his § 2255 motion. (ROA.2843–63.) The district court dismissed Vialva's Rule 60(b)(6) motion for lack of jurisdiction as an uncertified successive § 2255

4

motion, and denied a COA. (ROA.3534–39.) This Court likewise denied a COA, *United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018), and the Supreme Court denied certiorari, 140 S. Ct. 860 (2020).

## III.   Motion to Enjoin Execution

On July 31, 2020, the federal Bureau of Prisons (BOP)—at the direction of the Attorney General—scheduled Vialva's execution for September 24, 2020. (ROA.3565–66; *see* ROA.3585.) On August 14, 2020, Vialva filed a motion in the district court seeking to enjoin BOP and the U.S. Marshals Service (Marshals) from carrying out his execution. (ROA.3573–84.) Following a hearing, the district court denied Vialva's motion. (ROA.3663–75.)

The district court explained that, to obtain a preliminary injunction, Vialva was required to make the same showing needed for a stay of execution: he had to show (1) "'a substantial likelihood of success on the merits'" of his claims; (2) "'a substantial threat of irreparable injury'"; (3) that the harms from denial of injunctive relief would outweigh the harms of granting such relief; and (4) that the public interest favored an injunction. (ROA.3666 (quoting *Jones v. Tex. Dep't of*

*Crim. Just.*, 880 F.3d 756, 759 (5th Cir. 2018)).) The court determined that Vialva could not satisfy any of those requirements.

As relevant here, Vialva argued his execution was unauthorized because the government had not obtained a judicial warrant authorizing the Marshals to proceed and had not complied with several pre-execution procedures set forth in Texas law related to setting the execution date, issuing a warrant, and notifying the defendant and his counsel. (ROA.3576–82.) The district court rejected those assertions as inconsistent with federal law. (ROA.3668–71.) The court explained that federal law and the court's judgment already authorized the Marshals to proceed with Vialva's execution and that no further warrant was necessary. (ROA.3668.) Even if such a warrant were required, the court issued an order "out of an abundance of caution" ratifying Vialva's existing execution date and directing the Marshals to proceed. (ROA.3674–75.) As for Vialva's reliance on provisions of Texas law, the court observed that every court to have considered the question had determined that the FDPA at most requires the federal government to comply with a state's procedures for "effectuating death," such as the choice of execution method and lethal injection drug, and does not require

6

compliance with the sort of "pre-execution procedures" Vialva had identified. (ROA.3670–71 (citing cases).) Accordingly, the court found no likelihood that Vialva could succeed on the merits of his claims.

The district court also determined that Vialva could not satisfy any of the equitable requirements for obtaining injunctive relief. (ROA.3671–73.) The court explained that Vialva was not challenging the death sentence itself and had not identified any "irreparable injury" or "cognizable harm" he would likely suffer if his sentence was carried out using BOP's procedures rather than Texas's procedures. (ROA.3671–72.) The court further determined that the public's strong interest in carrying out Vialva's sentence, especially after his rights to direct appeal and collateral review had been exhausted, outweighed Vialva's interest in further delay. (ROA.3672–73; *see* ROA.3673 ("Vialva committed the horrendous murders of Stacie and Todd Bagley over 21 years ago and has received the full panoply of procedural protections afforded under the Constitution and the FDPA. No further delay is warranted.").)

## LEGAL FRAMEWORK

Like a preliminary injunction, a stay of execution is an extraordinary remedy that may issue only if the defendant establishes

(1) a "strong showing that he is likely to succeed on the merits" of his claims; (2) that he "will be irreparably injured absent a stay"; (3) that a stay will not "substantially injure the other parties interested in the proceeding"; and (4) that "the public interest" favors a stay. *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)); *see Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014) (per curiam) (same for motion to enjoin execution). A defendant's inability to demonstrate a strong likelihood of success on the merits "is, effectively, dispositive" of a request for a stay of execution. *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019) (per curiam); *see, e.g.*, *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *1 (U.S. Jul. 14, 2020) (per curiam) (vacating district court order enjoining scheduled executions where prisoners failed to "establish[] that they are likely to succeed on the merits" of their claims).

With respect to the remaining stay factors, a defendant who challenges the methods or procedures for carrying out a death sentence, but not the sentence itself, must show that use of existing methods or procedures rather than proffered alternatives will cause him irreparable injury; the mere existence of his death sentence is not enough. *See Hill v.*

*McDonough*, 547 U.S. 573, 580–81 (2006); *Wood v. Collier*, 836 F.3d 534, 542 (5th Cir. 2016). And in assessing the public interest and the potential harms of staying an execution, a court must take into account "the State's strong interest in enforcing its criminal judgments without undue interference" from courts—particularly where a capital defendant has exhausted the usual avenues for review of his death sentence and brings a claim shortly before that sentence is due to be carried out. *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019) (per curiam) (quoting *Hill*, 547 U.S. at 584); *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133–34 (2019) (explaining that "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence" that has been upheld on direct appeal and collateral review, and "[c]ourts should police carefully against attempts to use [further] challenges as tools to interpose unjustified delay") (quotation marks omitted).

## ARGUMENT

### I.    Vialva Cannot Establish a Strong Likelihood of Success on the Merits of His Claims

In his stay motion, Vialva contends that he has established a likelihood of success on the merits of his claims because his execution "does not conform to the clear requirements of Texas law." Mot. 3. His

9

support for that assertion is a blanket citation to the argument section of his opening brief on appeal. *Id.* As explained in the government's response brief, however, nothing in federal law or historical practice supports Vialva's assertion that the federal government must comply with all of Texas's pre-execution procedures in order to carry out his lawful federal sentence. *See* Gov't Resp. Br. 26–35.

As the district court explained in denying Vialva's identical claims below (*see* ROA.3668–71), the federal government has ample constitutional, statutory, and regulatory authority to set Vialva's execution date and carry out his sentence without seeking further judicial authorization or complying with Texas's pre-execution procedures. Indeed, every court of appeals to have considered the question has held that federal law *at most* requires the government to comply with a state's procedures for effectuating death—such as the choice of execution method and (potentially) secondary details such as the type and dosage of lethal-injection drug—but does *not* "incorporate [other] aspect[s] of the forum state's law regarding execution procedure," including pre-execution requirements related to selecting and providing notice of the execution date, attendance of witnesses, etc. *Peterson v.*

10

*Barr*, 965 F.3d 549, 554 (7th Cir. 2020), *stay denied*, No. 20A6, 2020 WL 3964236 (U.S. Jul. 14, 2020); *see United States v. Mitchell,* No. 20-99009, 2020 WL 4815961, at *2–3 & n.6 (9th Cir. Aug. 19, 2020); *In re Fed. BOPs' Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020) (per curiam) (describing opinion of Katsas, J.), *cert. denied*, 19-1348, 2020 WL 3492763 (U.S. Jun. 29, 2020); *id.* at 151 (Tatel, J., dissenting); *see also Barr v. Roane*, 140 S. Ct. 353 (2019) (statement of Alito, J.). Vialva cannot establish a strong likelihood that this sound judicial consensus is incorrect.

Vialva contends that, at a minimum, his "case presents a question of first impression in this Circuit" and that a stay is therefore warranted to allow an "orderly appeal in the regular course." Mot. 2. But as the Supreme Court and this Court have explained time and again, those are not sufficient reasons to grant a stay. "Last-minute stays [of executions] should be the extreme exception, not the norm." *Bucklew*, 139 S. Ct. at 1134. The requirement of a "strong showing" of likely success on the merits is a demanding one that is not satisfied whenever a defendant raises a novel or interesting legal question shortly before his execution date. *See Crutsinger*, 930 F.3d at 706–07 (citing *Nken*, 556 U.S. at 434);

11

*Adams*, 679 F.3d at 318; *see also Lee v. Watson*, No. 19-3399, 2019 WL 6718924, at \*1 (7th Cir. Dec. 6, 2019) (unpublished) (observing that court may not grant a stay of execution based on a mere "significant possibility" of success or a finding "that evaluating [the defendant]'s arguments will take more time"). Indeed, the Supreme Court recently vacated a stay of execution for a federal prisoner where a court of appeals had found only that the prisoner's claims were "worthy of further exploration" and that a stay would permit more "time for consideration and deliberation." *Purkey v. United States*, 964 F.3d 603, 618 (7th Cir.), *stay vacated*, No. 20A4, 2020 WL 3988688 (U.S. Jul. 15, 2020); *see also, e.g.*, *Lee*, 2020 WL 3964985, at \*1 (vacating order enjoining execution where defendant failed to show strong likelihood of success); *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (same).[1]

Vialva's inability to establish a strong likelihood of success on the merits of his claims is as "dispositive" of his request for a stay as it was for his motion for a preliminary injunction in the district court.

---

[1] The Supreme Court has, in fact, vacated or denied *every* stay presented to it in the five federal executions conducted this year.

12

*Crutsinger*, 930 F.3d at 707. (*See* ROA.3667–71.) His stay motion should therefore be denied.

## II.   Equitable Considerations Weigh Against a Stay

The balance of the equities also weighs against Vialva's request for a stay. In addition to Vialva's failure to establish a strong likelihood of success on the merits, he cannot demonstrate irreparable injury, that the balance of harms favors him, or that an injunction would comport with the public interest.

Most of Vialva's arguments that he is equitably entitled to a stay are based on his assertion that federal and state law required the government to seek court orders authorizing his execution and that the government "created the problem [he] is trying to remedy" by not seeking such authorization sooner. Mot. 4. As the district court explained, however, Vialva's premise is wrong: the government was *not* required to seek any additional court orders before carrying out Vialva's lawful sentence, and Vialva cannot overcome his inability to establish a strong likelihood of proving otherwise by repackaging the same flawed merits

arguments as reasons to strike the equitable balance in his favor. (*See* ROA.3667–71.)[2]

Vialva's remaining assertions fare no better. Vialva is not here challenging his death sentence, but only the methods or procedures for carrying it out. The mere existence of his death sentence does not, therefore, establish irreparable injury. *See Hill*, 547 U.S. at 580–81; *Wood*, 836 F.3d at 542. And as the district court correctly explained, ROA.3671–72, Vialva has not identified any cognizable harm that would result from following BOP's procedures rather than Texas's. He does not dispute that the top-line manner of execution is the same under federal and state law. *See Lee*, 2020 WL 3964985, at *1 (explaining that federal execution protocol involves lethal injection using a single dose of pentobarbital); *Wood*, 836 F.3d at 536 (same in Texas). And he has

---

[2] Vialva contends that his "execution was set for the first time" in the district court's supplemental order dated September 11, 2020, *see* ROA.3674–75, and that the government failed to "follow its own regulations . . . requiring that it obtain" such an order sooner. Mot. 1, 4. That assertion mischaracterizes the district court's supplemental order. As explained, BOP scheduled Vialva's execution on July 31, 2020. (*See* ROA.3564–65, 3585.) The district court held that BOP had ample legal and regulatory authority to do so, ROA.3667–71, and issued its supplemental order "out of an abundance of caution" in order to ratify the execution date BOP had already set and insulate it from any further challenge. (ROA.3674–75.) The court made clear, however, that the supplemental order was a prophylactic measure and was not "required to empower" the government to carry out Vialva's execution as planned. *Id.*

14

already received most of the pre-execution procedures he says he wants: the government selected an execution date well in advance and served a letter on Vialva and his counsel officially notifying him of his impending execution. (*See* ROA.3585.) *See Mitchell*, 2020 WL 4815961, at *2 (observing that warden's letter to federal prisoner informing him of execution date functions as an "Execution Warrant" that provides "'official notification'" of the government's intent to carry out his death sentence). The district court then issued a supplemental order ratifying his execution date and directing the Marshals to proceed. (ROA.3674–75.)

Although Vialva notes that Texas law would have required 91 days between the notice and his execution date—rather than the 55 days he received—he has never identified any potentially meritorious legal challenges he might have brought if given more time. (*See* ROA.3671–72.) Vialva has had two decades in which to challenge his sentence and has done so repeatedly (albeit unsuccessfully). He has also litigated extensively in three different jurisdictions since being notified of his execution. (ROA.3672 & n.3 (discussing litigation in this Circuit, the Seventh Circuit, and the District of Columbia).) As the district court

15

correctly explained, "there must come a time when the legal issues 'have been sufficiently litigated and re-litigated so that the law must be allowed to run its course.'" (ROA.3672 (quoting *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam)).) That time has now come.

The government also has an overwhelming interest in the timely enforcement of criminal sentences that have been upheld through extensive appellate and post-conviction proceedings in federal courts. *Bucklew*, 139 S. Ct. at 1133. Once post-conviction proceedings "have run their course," as they have here, "finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). Consequently, delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike." *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Unduly delaying executions can also frustrate the death penalty by undermining its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

The government's interest in implementing Vialva's sentence is magnified by the "heinous" nature of his crimes. (ROA.2660–61.) Vialva

was the ringleader of the brutal murders of Todd and Stacie Bagley. After kidnapping them, robbing them, and driving around with them locked in their own trunk for several hours as they pleaded for their lives, Vialva shot them both, killing Todd and then burning Stacie alive. His death sentence has been upheld throughout his many years of direct and post-conviction review. The balance of equities therefore tips strongly in the government's favor.

# CONCLUSION

For these reasons, Vialva's motion for a stay of execution should be denied.

Respectfully submitted,

ROBERT A. PARKER
Criminal Division, Appellate Section
U.S. Department of Justice

JOHN F. BASH
United States Attorney
Western District of Texas

JOSEPH H. GAY, JR.
Appellate Chief
Western District of Texas

**/s/ *Elizabeth Berenguer***
ELIZABETH BERENGUER
Assistant United States Attorney
Western District of Texas
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216
(210) 384-7100

## CERTIFICATE OF SERVICE

On September 17, 2020, I filed this document with the Fifth Circuit Court of Appeals using the CM/ECF filing system, which will cause a copy of the document to be electronically delivered to the defendant-appellant's counsel:

> Susan N. Otto
> Federal Public Defender
> Western District of Oklahoma
>
> Michael Lieberman
> Assistant Federal Public Defender
> Western District of Oklahoma
>
> Jared Tyler
> Tyler Law Firm, P.L.L.C.

/s/ *Elizabeth Berenguer*
ELIZABETH BERENGUER
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains **3,256** words; and

2. This document complies with the typeface requirements of Federal Rule Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook font, size 14.

/s/ *Elizabeth Berenguer*
ELIZABETH BERENGUER
Assistant United States Attorney