Tyler Law Firm, PLLC
P.O. Box 2604
Houston, TX 77223
jptyler@tylerlawfirm.org

September 17, 2020

**Via ECF**

Lyle W. Cayce
Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

  *Re:* United States v. Vialva*, No. 20-70019*

Dear Mr. Cayce:

  The Department of Justice (DOJ) has no authority to execute an inmate without a warrant issued by a competent authority. The Government argues regulations promulgated by the DOJ "vest" the Federal Bureau of Prisons (BOP) with "broad authority and discretion to set execution dates." Appellee's Br. at 17. This is incorrect for two reasons. First, the Attorney General may not "vest" powers in others that the Attorney General does not possess. Second, the regulations "vest" no such power in the BOP.

  Congress has not delegated to the Attorney General the power to order the execution of a person sentenced to death by an Article III court. No Act of Congress has vested the Attorney General or the BOP with the power to set execution dates. The Government expressly disclaims Congress has done so. *See* Appellee's Br. at 19 ("Since the First Congress 'made a number of' federal offenses 'punishable by death' in the Crimes Act of 1790 [] and continuing to the present day, Congress has not prescribed a rule for fixing the date of execution."). The Government cites no historical practice documenting the Attorney General's alleged power to unilaterally set execution dates. No such historical practice exists.

  The Government relies on *Holden v. Minnesota*, <u>137 U.S. 483</u> (1890), for the proposition that, "in the absence of [] a legislative rule, the Constitution permits either the executive or judiciary to set an execution date." Appellee's Br. at 19 (citing *id*. at 495–96). *Holden* stands for no such thing. *Holden* involved a Minnesota court judgment, and "under the law of Minnesota . . . the day on which the punishment of death should be inflicted depended upon the warrant of the governor." *Id*. at 495. *Holden* is not a case about legislative silence, but its opposite: legislative directive. The Court held it was "competent for the State to establish such regulations." *Id*.

Importantly, *Holden* observed "[t]he order designating the day of execution is, strictly speaking, no part of the judgment, unless made so by statute."[1] *Id*. Further, "Of course if the statute so requires, the court must, in its sentence, fix the day of execution. Equally must it forbear to do that if the statute confers upon some executive officer the power to designate the time of infliction." *Id*. at 496. Thus, *Holden* accords with the position advanced by Mr. Vialva: if Congress has directed the judiciary to apply state law warrant and date-setting requirements when implementing death sentences, then the judiciary must do so. If it has not, then historical judicial practice resorting to state law governs.

The Government also relies on the President's constitutional obligation to "take care that the Laws be faithfully executed." Appellee's Br. at 19 (citing U.S. Const. art. II, § 3). Judgments, however, are not "laws." Judgments govern only the parties to the litigation. Moreover, as the Supreme Court held in *Holden*, an order fixing the day of execution is not part of the judgment unless Congress has made it so by statute. The Government offers no citation to a statute making an order fixing the date of execution part of the judgment. Finally, neither the Attorney General nor the BOP is the President.

The Government suggests the DOJ regulations vest the BOP with the power to unilaterally execute individuals sentenced to death. Assuming, *arguendo*, the DOJ possessed such authority, the regulations do no such thing. Those regulations are premised on and fully honor the judiciary's prerogative to fix the execution date and command it to occur.

There is some irony in the Government's reliance on its regulations in this case, because it has to date wholly ignored them. Section 26.2, entitled "Proposed Judgment and Order," provides, "Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order." 28 C.F.R. § 26.2(a). The regulations further provide, "The attorney for the government shall append to the proposed Judgment and Order a Return by which the designated United States Marshal may inform the court that the sentence of death has been executed." *Id*. § 26.2(b). The DOJ's rules clearly require a warrant or order of the court directing a marshal to conduct the execution, and they provide for the marshal to file a return to that order.

The DOJ has confirmed this understanding. In response to a comment during the rulemaking process challenging the DOJ's Congressional authority to make the rules, the DOJ stated that no such problem existed:

---

[1] The Department of Justice's regulations recognize the need for further judicial order to execute, which is why they contemplate the filing of a "return" with the Court. 28 C.F.R. 26.2(b). Returns are not filed as to judgments.

2

> As for the Justice Department's "delegated authority," the Department does not need explicit authority to issue regulations establishing death penalty procedures. The Department is authorized to rely *on the authority of the federal courts*, acting pursuant to the All Writs Act, 28 U.S.C. 1651(a), *to order that their sentences be implemented.* Thus, § 26.2 directs the government's attorney in a capital case to file with the court a proposed Judgment and Order consistent with the regulations.

58 Fed. Reg. 4898-01, 4899-900 (emphasis added). The DOJ did not need Congress to delegate authority to set execution dates because its authority came from courts directing it to conduct executions. Thus, the regulations "direct[] government attorneys to seek a court order" that empowers and directs a marshal to supervise the execution. 58 Fed. Reg. 4898-01, 4900. The Government never sought such a judicial order in this case.

Under either the Federal Death Penalty Act (FDPA) or judicially created law, the Government is required to comply with the relevant state's execution warrant requirements. The Government largely relies on cases that do not address the FPDA's requirement of compliance with state law for this purpose. *See* Appellee's Br. at 27–28. Mr. Vialva addressed those cases in his brief. *See* Appellant's Br. at 21 n.8. The cases cited by the Government addressed the very narrow question of what "manner" means in the specific context of execution procedures; the application of the FDPA to state warrant requirements was not addressed.

Mr. Vialva agrees the FPDA, 18 U.S.C. § 3596(a), cannot be read to incorporate "every aspect" of the forum state's law regarding execution procedure. Appellee's Br. at 33 (citing *Peterson v. Barr*, 965 F.3d 549 (7th Cir. 2020)). The courts have held that it does not extend to various in-chamber execution procedures, including, for example, which witnesses may attend. Appellee's Br. at 33. There is an immense difference between those procedures, which are clearly incidental to *implementation* of a death sentence, and warrant and date-setting requirements, which are fundamental prerequisites to the execution. The only reason Attorney General Wirt's opinion exists is because the judiciary was steadfastly applying state law warrant requirements. If state law warrant requirements were merely incidental to implementing federal death sentences, there is no reason to believe the judiciary would have applied them even in emergencies, since no Congressional directive required it to do so at all.[2]

---

[2] The Government speculates that "deference" to state warrant requirements may have been "prudent" in 1818 "given the dependence of the federal law enforcement on state facilities at the time." Appellee's Br. at 23 n.5. But the United States Marshal Service's own website refutes this: "The first known federal execution under this authority was conducted by U.S. Marshal Henry Dearborn of Maine on June 25, 1790. He was ordered to execute one Thomas Bird for murder on

The Government argues its "longstanding 'practice'" of not being bound to follow "subsidiary details" of "state execution protocols or pre-execution procedures" weighs in its favor of determining that § 3596(a) does not require courts to rely on state law warrant requirements. Appellee's Br. at 31. While longstanding practice with respect to in-chamber execution procedures may well be on the Government's side, longstanding practice with respect to warrant requirements is firmly on Mr. Vialva's side. The FDPA must be read in conjunction with that longstanding practice.

Comparison of the FDPA's "implementation" provision to state laws implementing death sentences reflects a profound absence of detail in the former. A brief survey of some of the most active death penalty states reveals state legislatures generally provide detailed and specific procedures for setting execution dates and issuing execution warrants. *See* App. 1. The complete dearth of rules from Congress delineating "when the sentence is to be implemented" was unlikely to be an accident, and, as pointed out in his opening brief, the provision generally evinces a Congressional intent that the federal judiciary would be implementing death sentences according to state law. Thus, it is reasonable to conclude that § 3596(a) reflects Congress's intent that courts rely on relevant state law warrant and date-setting requirements to implement judgments imposing death.

For the foregoing reasons, the Court should hold the material aspects of Texas statutory law governing the implementation of death sentences—including its date-setting and warrant requirements—govern the implementation of the death sentence in this case.

Respectfully submitted,

s/ Jared Tyler
JARED TYLER
SUSAN M. OTTO
MICHAEL LIEBERMAN

*Counsel for Defendant Christopher André Vialva*

cc:    Mr. Joseph H. Gay, Jr., via ECF service

_____

the high seas. In coordinating this, Dearborn spent money on building a gallows and coffin. Later, as U.S. Marshals saw more death sentences imposed, a few districts resorted to more permanent equipment. U.S. Marshal E.D. Nix of Oklahoma had a portable scaffold that could be easily packed for travel in 1894." *See* History—Historical Federal Executions, available at https://www.usmarshals.gov/history/executions.htm (last visited Sept. 17, 2020).

APPENDIX 1

Survey of Statutes Governing Setting of Execution Dates and Warrant
Requirements

ALABAMA

Ala. R. App. P. 8(d)(1): directing trial courts not to set execution dates when
judgment is rendered and directing the supreme court to enter an order fixing a date
of execution at appropriate time)

ARIZONA

Ariz. R. Crim. Proc. 31.23: warrant of execution issued by Arizona Supreme Court
following affirmance of case on direct appeal and notice from the State that
defendant has not pursued habeas relief or habeas relief has concluded; Arizona
Supreme Court must set date 35 days from issuance of execution warrant—but may
extend that to up to 60 days if 35 days is impracticable—and warrant is valid for 24
hours on date set by Arizona Supreme Court beginning at an hour to be designated
by the Arizona Department of Corrections

ARKANSAS

Ark. Code § 16-90-110: where judgment of death is announced, the day of execution
should shall be fixed in the trial court's judgment not less than 30 days after the
judgment

Ark. R. Crim. Proc. 37.5(g): upon affirmance of a death sentence by the state
supreme court, the circuit court shall enter a stay of execution until circumstances
regarding a post-conviction petition are met

Ark. Code § 16-90-507: when an execution does not take place on the day chosen
by the trial court, the governor shall fix the day of execution by issuing a warrant

CALIFORNIA

Cal. Penal Code § 1227(a): if a judgment of death has not been entered after appeals,
the trial court, on its own motion or application of the district attorney, shall enter
an order specifying a period of 10 days during which the execution will take place,
no less than 30 days and no more than 60 days after the order is entered

<u>Cal. Penal Code § 1227.5</u>: after a stay or reprieve, the execution shall be carried out on the day immediately after the period of the stay or reprieve without further judicial proceedings

GEORGIA

<u>Ga. Code Ann. § 17-10-34</u>: directing trial court to specify in the judgment a seven-day time period for the execution in the sentence which must commence not less than 20 days nor more than 60 days from the date of sentencing

LOUISIANA

<u>La. Stat. § 15:567(b)</u>: trial court must issue warrant that specifies an execution date not less than 60 days nor more than 90 days from the date the warrant is issued

<u>La. Stat. § 15:567(c)</u>: if any federal or state court grants a stay or the governor grants a reprieve, the trial court shall reset the execution date at not less than 30 days nor more than 45 days from dissolution of the stay order or termination/expiration of the reprieve

<u>La. Stat. § 15:567(e)</u>: if the trial court fails to fix an execution date, the attorney general shall bring a mandamus proceeding in any court of competent jurisdiction to have the trial court set the execution date at not less than 30 days nor more than 45 days from the date of issuance of the mandamus order

MISSOURI

<u>Mo. Rev. Stat. § 546.680</u>: court must sign warrant appointing a day on which the judgment must be executed

<u>Mo. Rev. Stat. § 546.700</u> & <u>546.710</u>: if original execution warrant expires, the convicting court or supreme court must issue warrant upon petition of the prosecuting attorney

OKLAHOMA

<u>Okla Stat. tit. 22 § 1001</u>: directing trial courts to issue warrant fixing execution date upon sentencing

Okla. Stat. tit. 22 § 1001.1: directing Court of Criminal Appeals to set execution dates upon certain events where the trial court's execution date has expired without execution

TEXAS

Tex. Code Crim. Proc. art. 43.141: following initial post-conviction review, court must set execution date no earlier than 91 days after the day the court enters the order setting the execution

Tex. Code Crim. Proc. art. 43.15: court must issue warrant under seal of court and deliver to appropriate correctional officer

VIRGINIA

Va. Code § 53.1-232.1: directing trial courts to set execution dates upon notice by the Attorney General and after independently determining certain circumstances about the case's status are present